IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

| | |
|---|---|
| **In re** | **Chapter 11** |
| **KEY PLASTICS L.L.C. (7449) and** | **Case No. _____ (____)** |
| **KEY PLASTICS FINANCE CORP. (6717),** | |
| **Debtors.** | **Joint Administration Requested** |

-------------------------------------------------------------------x

## JOINT PREPACKAGED PLAN
## OF REORGANIZATION OF KEY PLASTICS L.L.C.
## AND KEY PLASTICS FINANCE CORP. PROPOSED BY
## KEY PLASTICS L.L.C. AND KEY PLASTICS FINANCE CORP.

Key Plastics L.L.C. ("Key Plastics") and Key Plastics Finance Corp. ("Finance Corp.", and together with Key Plastics, the "Debtors", and each a "Debtor") propose the following joint prepackaged chapter 11 plan for the Debtors (collectively, the "Prepackaged Plan") pursuant to section 1121(a) of the Bankruptcy Code. This Prepackaged Plan contemplates a joint chapter 11 plan for the substantively consolidated estates of the Debtors, of which the Debtors are co-proponents.

# TABLE OF CONTENTS

ARTICLE I      DEFINITIONS AND INTERPRETATION ........................................ 1

A.     Definitions ................................................................................................. 1

B.     Rules of Interpretation. ............................................................................. 7

ARTICLE II     PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS .......... 8

    2.1     Administrative Expense Claims ................................................. 8

    2.2     Professional Compensation and Reimbursement Claims. .......................... 9

    2.3     Priority Tax Claims. ..................................................................... 9

    2.4     DIP Claims. .................................................................................. 9

    2.5     Other Priority Claims. .................................................................. 9

ARTICLE III     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..... 10

ARTICLE IV     TREATMENT OF CLAIMS AND EQUITY INTERESTS .............. 10

    4.1     Class 1 – Senior Notes Claims ................................................. 10

    4.2     Class 2 – Other Secured Claims. .............................................. 11

    4.3     Class 3 – Lease Rejection Claims. ............................................ 11

    4.4     Class 4 – General Unsecured Claims. ...................................... 11

    4.5     Class 5 – Series A Units Claims ............................................... 12

    4.6     Class 6 – Existing Key Plastics Units ...................................... 12

    4.7     Class 7 – Existing Finance Corp. Stock. .................................. 12

ARTICLE V     IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION ......................................... 13

    5.1     Holders of Claims and Equity Interests Entitled to Vote. ........................ 13

    5.2     Holders of Claims and Equity Interests Not Entitled to Vote. ................ 13

    5.3     Nonconsensual Confirmation. ................................................... 13

ARTICLE VI     MEANS OF IMPLEMENTATION AND POST-EFFECTIVE DATE GOVERNANCE ................................................................ 13

    6.1     Substantive Consolidation. ........................................................ 13

    6.2     Restructuring and Other Corporate Actions and Transactions ................ 14

    6.3     Cancellation of Existing Securities. .......................................... 16

DA1:\539312\11\BK4W11!.DOC\56316.0003

6.4     Surrender of Existing Securities. ...............................................................17

6.5     Issuance and Contribution of New Securities ...........................................17

6.6     Cancellation of Liens. ..............................................................................18

6.7     Rights Offering. .......................................................................................18

6.8     Preservation of Rights of Action; Settlement of Litigation Claims. ........18

6.9     Effectuating Documents; Further Transactions. .......................................18

6.10    Exemption from Certain Transfer Taxes. ..................................................19

6.11    Dissolution of any Statutory Committees and Cessation of Fee and
        Expense Payment. ....................................................................................19

ARTICLE VII     PROVISIONS GOVERNING DISTRIBUTIONS............................19

7.1     Date of Distributions on Account of Allowed Claims. .............................19

7.2     Sources of Cash for the Prepackaged Plan Distribution............................20

7.3     Disbursing Agent. ....................................................................................20

7.4     Rights and Powers of Disbursing Agent. .................................................20

7.5     Expenses of the Disbursing Agent. ..........................................................20

7.6     Record Date for Distribution. ..................................................................20

7.7     Delivery of Distributions. ........................................................................20

7.8     Manner of Payment Under Prepackaged Plan. .........................................21

7.9     Fractional Shares. ....................................................................................21

7.10    Setoffs and Recoupment. .........................................................................22

7.11    Distributions After Effective Date............................................................22

7.12    Allocation of Payments under the Prepackaged Plan. ...............................22

7.13    No Postpetition Interest on Claims. ..........................................................22

ARTICLE VIII    PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER
                THE PREPACKAGED PLAN ......................................................22

8.1     Disputed Claims. .....................................................................................22

8.2     Objections to Claims. ..............................................................................23

8.3     No Distributions Pending Allowance. ......................................................23

8.4     Distributions After Allowance. ................................................................23

ii

ARTICLE IX    TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ........................................................23

9.1    Assumption of Contracts and Leases. .......................................23

9.2    Inclusiveness...............................................................24

9.3    Payments Related to Assumption of Contracts and Leases......................24

9.4    Rejected Contracts and Leases. ..............................................24

9.5    Claims Based on Rejection of Executory Contracts or Unexpired
Leases. .....................................................................24

9.6    Compensation and Benefit Plans and Treatment of Retirement Plan. ......25

9.7    Insurance Policies. .........................................................25

ARTICLE X    CONDITIONS PRECEDENT TO EFFECTIVE DATE .................25

10.1    Conditions Precedent to Effective Date of Prepackaged Plan..................25

10.2    Waiver of Conditions Precedent...............................................26

10.3    Effect of Failure of Conditions. ............................................26

10.4    Reservation of Rights. ......................................................27

10.5    Substantial Consummation. ...................................................27

ARTICLE XI    EFFECT OF CONFIRMATION .........................................27

11.1    Revesting of Assets. ........................................................27

11.2    Binding Effect. .............................................................28

11.3    Discharge of the Debtors. ...................................................28

11.4    Exculpation..................................................................28

11.5    Releases by the Debtors......................................................29

11.6    Releases By Holders of Claims and Equity Interests. ........................29

11.7    Waiver of Avoidance Actions. ................................................30

11.8    Term of Injunctions or Stays. ...............................................30

11.9    Indemnification Obligations. ................................................30

11.10   Preservation of Claims. .....................................................31

11.11   Compromise of Controversies .................................................31

ARTICLE XII    RETENTION OF JURISDICTION .....................................32

ARTICLE XIII    MISCELLANEOUS ...................................................33

iii

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 13.1 | Payment of Statutory Fees. | 33 |
| 13.2 | Filing of Additional Documents. | 33 |
| 13.3 | Schedules and Exhibits Incorporated. | 33 |
| 13.4 | Intercompany Claims. | 33 |
| 13.5 | Amendment or Modification of the Prepackaged Plan. | 34 |
| 13.6 | Inconsistency. | 34 |
| 13.7 | Section 1125(e) of the Bankruptcy Code. | 34 |
| 13.8 | Compliance with Tax Requirements. | 34 |
| 13.9 | Exemption from Certain Transfer Taxes. | 35 |
| 13.10 | Expedited Tax Determination. | 35 |
| 13.11 | Severability of Provisions in the Prepackaged Plan. | 35 |
| 13.12 | Governing Law. | 36 |
| 13.13 | No Admissions. | 36 |
| 13.14 | Notices. | 36 |

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings set forth below:

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed under and in accordance with, as applicable, sections 330, 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including the reasonable fees and expenses of Latham & Watkins LLP and FTI Consulting in connection with services provided to Wayzata in connection with the DIP Facility and the Prepackaged Plan, which fees and expenses shall not be subject to the filing of fee applications with the Bankruptcy Court. Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code is excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 13.1 (Payment of Statutory Fees) hereof.

*Allowed* means, with reference to any Claim or Equity Interest, (a) any Claim or Equity Interest (i) as to which no objection to allowance has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, *provided, however,* that such period may not exceed sixty (60) days after the Effective Date, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Equity Interest expressly allowed hereunder.

*Backstop Purchase Agreement* means that certain agreement to be entered into by Key Plastics, Finance Corp. and Wayzata and certain other lenders prior to the Petition Date pursuant to which Wayzata and any such lenders shall agree to backstop the Rights Offering, on a fully subscribed basis, in an amount of no less than $20 million.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

***Business Day*** means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

***Cash*** means legal tender of the United States of America.

***Cash Election*** means the election by the holder of an Allowed Senior Notes Claim to receive Cash equal to 16% of the face amount of its Senior Notes.

***Certificate*** means any certificate, instrument, or other document evidencing an Extinguished Security.

***Chapter 11 Cases*** means the jointly administered chapter 11 cases of the Debtors.

***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

***Class*** means any group of substantially similar Claims or Equity Interests classified by the Prepackaged Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

***Collateral*** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

***Committee*** means any official committee appointed in the Chapter 11 Cases, as such committee may be reconstituted from time to time.

***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Prepackaged Plan, as such hearing may be adjourned or continued from time to time.

***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming the Prepackaged Plan.

***Cure*** means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**DDJ** means certain funds and/or accounts managed and/or advised by DDJ Capital Management, LLC.

**Debtor** means each of Key Plastics and Finance Corp. in their capacity as a debtor and debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

**DIP Claims** means any Claim arising under or in connection with the DIP Facility.

**DIP Facility** means any debt facilities approved by the Bankruptcy Court pursuant to section 364 of the Bankruptcy Code, and any amendments, modifications or supplements thereof.

**DIP Lender** means the lender(s) under a DIP Facility.

**Disbursing Agent** means Key Plastics or any party designated by Key Plastics, in its sole discretion, and approved by the Bankruptcy Court if other than Key Plastics, to serve as a disbursing agent under Section 7.3 hereof.

**Disclosure Statement** means that certain disclosure statement relating to the Prepackaged Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time with the consent of the Debtors, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

**Disputed Claim** means, with respect to a Claim or Equity Interest, any such Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the Prepackaged Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of claim or interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Confirmation Date in accordance with the Prepackaged Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

**Disputed Equity Interest** means any Equity Interest that is not an Allowed Equity Interest.

**Distribution Date** means the date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Prepackaged Plan.

**Distribution Record Date** means, other than with respect to any publicly held securities, the record date for purposes of making distributions under the Prepackaged Plan on account of Allowed Claims, which date shall be five (5) Business Days after the Effective Date.

**Effective Date** means the first Business Day on which all the conditions precedent to the Effective Date specified in Section 10.1 hereof shall have been satisfied or waived as provided in Section 10.2 hereof, but in no event, no later than February 28, 2009; *provided,*

*however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

    ***Eligible Claims and Equity Interests*** means, collectively, the Senior Notes Claims and Series A Units Claims, holders of which are entitled to vote under Section 5.1 hereof and section 1126 of the Bankruptcy Code to accept or reject the Plan.

    ***Equity Election*** means the election by the holder of an Allowed Senior Notes Claim to receive its pro rata share of 65% of New Key Plastics Equity, which will subsequently be contributed to Reorganized Finance Corp. in exchange for an equal percentage of New Finance Corp. Equity, *plus* the opportunity to subscribe for its pro rata share of not more than 35% of the New Key Plastics Equity, which will also subsequently be contributed to Reorganized Finance Corp. in exchange for an equal percentage of New Finance Corp. Equity, pursuant to the Rights Offering.

    ***Equity Interest*** means the interest of any holders of equity securities of any of the Debtors represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

    ***Escrow Account*** means the bank account to be established by the Escrow Agent for the purpose of holding all amounts paid by holders of Senior Notes Claims for the purchase of New Key Plastics Equity pursuant to the Rights Offering.

    ***Escrow Agent*** means a federally chartered bank with capital of not less than $100 million, which shall receive payments made by holders of Senior Notes Claims electing to participate in the Rights Offering (including amounts received from Wayzata pursuant to the Backstop Purchase Agreement) and shall hold such amounts in the Escrow Account during the time between the Rights Offering Purchase Date and the Effective Date. The Escrow Agent shall be Wells Fargo Bank, N.A.

    ***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

    ***Existing Credit Facility*** means that certain delayed draw loan credit facility between Key Plastics and Wayzata, as administrative agent, and certain capital funds managed by Wayzata as lenders, dated November 12, 2008.

    ***Existing Finance Corp. Stock*** means the common stock of Finance Corp., par value $0.01 per share, issued and outstanding immediately before the Petition Date.

    ***Existing Key Plastics Units*** means Key Plastics' common unit shares issued and outstanding immediately before the Petition Date.

***Exit Facility*** means the proposed exit facility to be entered into by the Reorganized Debtors, on the Effective Date, in an aggregate amount of no less than $25 million, the loan agreement for which will be included in the Plan Supplement.

***Extinguished Securities*** means all Existing Series A Units, Senior Notes, Existing Key Plastics Units and Existing Finance Corp. Stock.

***Finance Corp.*** means Key Plastics Finance Corp.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***General Unsecured Claim*** means any unsecured claim against any Debtor other than a Series A Unit Claim that is not entitled to priority under section 507 of the Bankruptcy Code.

***Indenture Trustee*** means Wells Fargo Bank, National Association, as trustee, with respect to the Senior Notes Indenture.

***Lease Rejection Claim*** means any Claim which arises pursuant to the Debtors' rejection of an unexpired lease of non-residential real property pursuant to a Final Order pursuant to section 365 of the Bankruptcy Code.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the District of Delaware.

***Key Plastics*** means Key Plastics L.L.C.

***Majority Holders*** means collectively, Wayzata and DDJ.

***Management Retention and Incentive Plan*** means the management retention and incentive plan to be adopted by Reorganized Key Plastics pursuant to the Prepackaged Plan and substantially in the form to be included in the Prepackaged Plan Supplement.

*New Finance Corp. Equity* means the common stock of Reorganized Finance Corp., par value $0.01 per share, to be issued to the holders of Allowed Senior Notes Claims in exchange for such holders' New Key Plastics Equity pursuant to the Prepackaged Plan as of the Effective Date.

*New Key Plastics Equity* means the new common unit shares to be issued by Reorganized Key Plastics to Reorganized Finance Corp. pursuant to the Prepackaged Plan as of the Effective Date.

*Other Priority Claim* means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

*Other Secured Claim* means a Claim that, pursuant to section 506 of the Bankruptcy Code, is (a) secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the estate, to the extent of the value of the holder's interest in such property as of the relevant determination date (including any prepetition funds extended to the Debtors under the Existing Credit Facility) or (b) Allowed as such pursuant to the terms of the Prepackaged Plan (subject to the occurrence of the Effective Date) (including any Claim that is (i) subject to an offset right under applicable law and (ii) a secured claim against a Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code).

*Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

*Petition Date* means the date on which each of the respective Debtors files its voluntary petition for reorganization relief under chapter 11 of the Bankruptcy Code.

*Prepackaged Plan* means this joint prepackaged plan of reorganization, as the same may be amended, supplemented or otherwise modified, with the consent of the Debtors, including the exhibits and schedules hereto and contained in the Prepackaged Plan Supplement.

*Prepackaged Plan Supplement* means the compilation of documents, including any exhibits to the Prepackaged Plan not included therewith, including, without limitation, the Stockholders Agreement, Rights Offering documents, and any agreement entered into with the Escrow Agent concerning the Escrow Account that the Debtors may file with the Bankruptcy Court on or before the date that is five (5) Business Days prior to the Confirmation Hearing.

*Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Reorganized Debtor* means any of the Debtors after the Effective Date.

*Reorganized Finance Corp.* means Finance Corp., as a post-confirmation entity reorganized under the Prepackaged Plan.

*Reorganized Key Plastics* means Key Plastics L.L.C., a Michigan limited liability company, as a post-confirmation entity reorganized under the Prepackaged Plan, which will be a wholly-owned subsidiary of Reorganized Finance Corp. as of the Effective Date.

*Restructuring Agreement* means the November 10, 2008, restructuring and plan support agreement between Key Plastics, Finance Corp., and the Majority Holders.

*Rights* means the non-transferable subscription rights offered each holder of Senior Notes in connection with the Rights Offering.

*Rights Offering* means the offering of the Rights to purchase up to 350,000 shares of New Key Plastics Equity at an aggregate purchase price of $20 million, which shares will subsequently be contributed to Reorganized Finance Corp. in exchange for an equivalent amount of New Finance Corp. Equity.

*Secured Claim* means, a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by a Debtor or Reorganized Debtors and the holder of such Claim.

*Senior Notes Claim* means any Claim under the Senior Notes.

*Senior Notes* means the 11¾% senior secured notes due 2013 issued by Key Plastics and Finance Corp. in the aggregate principal amount of $115 million.

*Senior Notes Indenture* means that certain Indenture, dated as of March 12, 2007, among Key Plastics and Finance Corp., the Guarantors named therein and Wells Fargo Bank, National Association, as trustee and collateral agent, governing the Senior Notes.

*Series A Units* means the Series A Preferred Units of Key Plastics.

*Series A Unit Claims* means any claim under the Series A Units.

*Stockholders Agreement* means that certain agreement, by and among Finance Corp. and certain holders of the Senior Notes, to be entered into as of the Effective Date on terms and conditions as set forth in the Disclosure Statement and substantially in the form to be included in the Prepackaged Plan Supplement.

*Wayzata* means Wayzata Investment Partners LLC, as the manager of certain funds, and as administrative agent and as collateral agent with respect to the Existing Credit Facility (in each such capacity, the "Agent").

**B.   Rules of Interpretation.**

For purposes of the Prepackaged Plan: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular

and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) unless otherwise specified, any reference in the Prepackaged Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in the Prepackaged Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (5) unless otherwise specified, all references in the Prepackaged Plan to articles are references to articles of the Prepackaged Plan; (6) unless otherwise specified, all references in the Prepackaged Plan to exhibits are references to exhibits in the Prepackaged Plan Supplement; (7) the words "herein," "hereof," and "hereto" refer to the Prepackaged Plan in its entirety rather than to a particular portion of the Prepackaged Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Prepackaged Plan, the rights and obligations arising pursuant to the Prepackaged Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to articles of the Prepackaged Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Prepackaged Plan; (10) unless otherwise set forth in the Prepackaged Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form in the Prepackaged Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) all references to docket numbers of documents filed in the Debtors' Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Debtors' Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Prepackaged Plan all without further Bankruptcy Court order.

In computing any period of time prescribed or allowed by the Prepackaged Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS

### 2.1 *Administrative Expense Claims.*

Each holder of an Allowed Administrative Expense Claim will be paid by the Debtors in accordance with the terms and conditions of the particular transaction and any related agreements and instruments. All other Allowed Administrative Expense Claims will be paid, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed

Administrative Expense Claim, in full, in Cash, on the Effective Date or as soon thereafter as is practicable, or on such other terms to which the Debtors and the holder of such Administrative Expense Claim agree.

## 2.2 *Professional Compensation and Reimbursement Claims.*

Except as provided in Section 2.1 hereof, all entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

## 2.3 *Priority Tax Claims.*

With respect to any Priority Tax Claims not paid pursuant to prior Bankruptcy Court Order, except to the extent that a holder of an Allowed Priority Tax Claim against a Debtor agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such holder, or as may be due and owing under applicable non-bankruptcy law, or in the ordinary course of business; or (c) be treated on such other terms and conditions as are acceptable to the Debtors and the holder of such Claim.

## 2.4 *DIP Claims.*

On the Effective Date, all Allowed DIP Claims, if any, shall be paid in full in Cash from, *inter alia*, the proceeds of the Rights Offering or the Exit Facility. Upon payment and satisfaction in full of all Allowed DIP Claims, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

## 2.5 *Other Priority Claims.*

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Other Priority Claim shall be paid an amount in Cash equal to the Allowed amount of such Other Priority Claim.

# ARTICLE III

## CLASSIFICATION OF CLAIMS
## AND EQUITY INTERESTS

The Prepackaged Plan is premised upon the substantive consolidation of the Debtors for purposes of the Prepackaged Plan only. Accordingly, for purposes of the Prepackaged Plan, the assets and liabilities of the Debtors are deemed the assets and liabilities of a single, consolidated entity.

The categories of Claims and Equity Interests are classified for all purposes, including voting, confirmation, and distribution, pursuant to the Prepackaged Plan as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Senior Notes Claims | Impaired | Yes |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Lease Rejection Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 5 | Series A Unit Claims | Impaired | Yes |
| Class 6 | Existing Key Plastics Units | Impaired | No (deemed to reject) |
| Class 7 | Existing Finance Corp. Stock | Impaired | No (deemed to reject) |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    *Class 1 – Senior Notes Claims.*

(a)    Impairment and Voting. Class 1 is impaired by the Prepackaged Plan. Each holder of an Allowed Senior Notes Claim is entitled to vote to accept or reject the Prepackaged Plan.

(b)     Distributions.  On the Effective Date, except to the extent that a holder of an Allowed Senior Notes Claim agrees to less favorable treatment, each holder of an Allowed Senior Notes Claim will receive, in full satisfaction of such claim, either: (a) its pro rata share of 65% of the fully-diluted New Key Plastics Equity, which will subsequently be contributed to Reorganized Finance Corp. in exchange for an equal percentage of New Finance Corp. Equity, or (b) Cash equal to 16% of the face value of its Senior Notes.  In addition, those holders of Allowed Senior Notes Claims who elect to receive their pro rata share of 65% of the fully-diluted New Key Plastics Equity will be entitled to subscribe for their pro rata share of not more than 35% of New Key Plastics Equity, which will also subsequently be contributed to Reorganized Finance Corp. in exchange for an equal percentage of New Finance Corp. Equity, pursuant to the Rights Offering.  Any non-electing holder will receive Cash equal to 16% of the face value of its Senior Notes.

### 4.2     *Class 2 – Other Secured Claims.*

(a)     Impairment and Voting.  Class 2 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distribution.  On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of a Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.  All Allowed Other Secured Claims that are not due and payable on or before the Effective Date shall, at the Debtors' option, be paid (i) in the ordinary course of business in accordance with the course of practice between the Debtors and such holder with respect to such Claim, or (ii) by transfer of the Collateral to the holder of such Claim.

### 4.3     *Class 3 – Lease Rejection Claims.*

(a)     Impairment and Voting.  Class 3 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed Lease Rejection Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distribution.  On the Effective Date, each holder of an Allowed Lease Rejection Claim, except to the extent that a holder of Lease Rejection Claim agrees to less favorable treatment, shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, be paid in full in Cash.

### 4.4     *Class 4 – General Unsecured Claims.*

(a)     Impairment and Voting.  Class 4 is unimpaired by the Prepackaged Plan.  Each holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to accept the Prepackaged Plan.

(b)     Distributions. Each holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, in the sole discretion of the Debtors: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the holder of such Claim.

### 4.5     *Class 5 – Series A Units Claims.*

(a)     Impairment and Voting. Class 5 is impaired by the Prepackaged Plan. Each holder of an Allowed Series A Units Claim is entitled to vote to accept or reject the Prepackaged Plan.

(b)     Distribution. On the Effective Date prior to the contribution of New Key Plastics Equity purchased pursuant to the Rights Offering, except to the extent that a holder of an Allowed Series A Unit Claim agrees to less favorable treatment, each holder of an Allowed Series A Unit Claim will receive, in full satisfaction of such Claim, Cash consideration equal to $474 per Series A Unit held. On the Effective Date, all Series A Units shall be cancelled, whether surrendered for cancellation or otherwise, and holders of such Series A Units shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Series A Units other than the consideration described above.

### 4.6     *Class 6 – Existing Key Plastics Units.*

(a)     Impairment and Voting. Class 6 is impaired by the Prepackaged Plan. Each holder of an Allowed Existing Key Plastics Units Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to reject the Prepackaged Plan.

(b)     Distribution. On the Effective Date, the Existing Key Plastics Units shall be cancelled, whether surrendered for cancellation or otherwise, and holders of Existing Key Plastics Units shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Existing Key Plastics Units.

### 4.7     *Class 7 – Existing Finance Corp. Stock.*

(a)     Impairment and Voting. Class 7 is impaired by the Prepackaged Plan. The holder of an Allowed Existing Finance Corp. Stock Claim is not entitled to vote to accept or reject the Prepackaged Plan and shall be conclusively deemed to reject the Prepackaged Plan.

(b)     Distribution.  On the Effective Date, all Equity Interests in Finance Corp. shall be cancelled, whether surrendered for cancellation or otherwise, and the holder of Existing Finance Corp. Stock shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Existing Finance Corp. Stock.

## ARTICLE V

## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

**5.1**     *Holders of Claims and Equity Interests Entitled to Vote.*

Each of Class 1 (Senior Notes Claims) and Class 5 (Series A Unit Claims) is entitled to vote to accept or reject this Prepackaged Plan.

**5.2**     *Holders of Claims and Equity Interests Not Entitled to Vote.*

Each of Class 2 (Other Secured Claims), Class 3 (Lease Rejection Claims) and Class 4 (General Unsecured Claims) is unimpaired by the Prepackaged Plan and the holders of Allowed Claims or Allowed Equity Interests in each of such Classes are conclusively presumed to have accepted the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.

Each of Class 6 (Existing Key Plastics Units) and Class 7 (Existing Finance Corp. Stock) is impaired by the Prepackaged Plan and the holders of claims in such Classes are presumed to have rejected the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.

**5.3**     *Nonconsensual Confirmation.*

If any impaired Class of Claims entitled to vote shall not accept the Prepackaged Plan by the requisite statutory majority provided in section 1126(c) or (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Prepackaged Plan in accordance with Section 13.5 of the Prepackaged Plan or to undertake to have the Bankruptcy Court confirm the Prepackaged Plan under section 1129(b) of the Bankruptcy Code or both.

# ARTICLE VI

## MEANS OF IMPLEMENTATION
## AND POST-EFFECTIVE DATE GOVERNANCE

### 6.1 *Substantive Consolidation.* [1]

The Prepackaged Plan is premised upon the substantive consolidation of the Debtors for purposes of the Prepackaged Plan only. Accordingly, on the Effective Date, all of the Debtors and their Estates shall, for purposes of the Prepackaged Plan only, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated for as though they were merged, (iii) all joint obligations of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single claim against the Debtors, and (iv) any Claim filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Prepackaged Plan) affect (x) the legal and corporate structures of the Debtors and (y) any intercompany claims.

### 6.2 *Restructuring and Other Corporate Actions and Transactions.*

(a) <u>Restructuring Transactions</u>. Upon the Effective Date, the following transactions (the "Restructuring Transactions") shall be effectuated in the order set forth:

(i) Simultaneously, (A) in accordance with Section 6.3 hereof, all of the Existing Finance Corp. Stock and Existing Key Plastics Units shall be cancelled, (B) holders of Existing Series A Units shall receive Cash consideration equal to $474 per Series A Unit held in full satisfaction of their Claims, (C) non-electing holders of Senior Notes and holders of Senior Notes that make the Cash Election will receive Cash equal to 16% of the face value of their Senior Notes in full satisfaction of their Claims, (D) holders of Senior Notes that make the Equity Election will receive their pro rata share of 65% of the fully-diluted New Key Plastics Equity in full satisfaction of their Claims (and in proportion to the relative values of their Claims), and (E) holders of Senior Notes that subscribe for New Key Plastics Equity under the Rights Offering will receive their pro rata share of 35% of the fully-diluted New Key Plastics Equity in exchange for their Cash payments under the Rights Offering; and

(ii) Immediately thereafter, the holders of Senior Notes that make the Equity Election shall contribute 100% of the New Key Plastics Equity (including the New Key Plastics Equity purchased pursuant to the Rights Offering) to Reorganized Finance Corp. in exchange for 100% of the New Finance Corp. Equity.

(b) <u>Consistent Tax Reporting</u>.

---

[1] This section was amended post-solicitation to correct certain typographical errors in accordance with Section 13.5 hereof.

(i)     All parties (including the Reorganized Debtors, the holders of Extinguished Securities and holders of New Finance Corp. Equity) shall report for all federal income tax purposes consistent with the form of the Restructuring Transactions.

(ii)     As soon as possible after the Effective Date, but in no event later than thirty (30) days thereafter, the board of directors of Reorganized Finance Corp. shall determine the value of the underlying assets of Reorganized Key Plastics as of the Effective Date (as appropriate for federal income tax purposes). The board of directors of Reorganized Finance Corp. shall apprise, in writing, all parties of such valuation. The valuation shall be used consistently by all parties (including the Reorganized Debtors, the holders Extinguished Securities and the holders of New Finance Cop. Equity) for all federal income tax purposes.

(iii)     No election shall be made by Reorganized Key Plastics to be taxed as a corporation for federal income tax purposes that is effective on or prior to the Effective Date.

(c)     <u>Other Transactions</u>. On or as of the Effective Date or as soon as practicable thereafter and without the need for any further action, the Reorganized Debtors may: (i) cause any or all of the Reorganized Debtors or to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Plan.

(d)     <u>General Corporate Actions</u>. Upon the Effective Date, all actions contemplated by the Prepackaged Plan shall be deemed authorized and approved in all respects, including (i) adoption or assumption, as applicable, of the agreements with existing management, (ii) the issuance of 65% of the New Key Plastics Equity to holders of Allowed Senior Notes Claims that make the Equity Election in full satisfaction of their Allowed Senior Notes Claims, (iii) issuance of 35% of the New Key Plastics Equity to holders of Allowed Senior Notes Claims who elect to participate in the Rights Offering, (iv) contribution of 100% of the New Key Plastics Equity by holders thereof to Reorganized Finance Corp. in exchange for the issuance of 100% of the New Finance Corp. Equity, (v) selection of the directors and officers of Reorganized Finance Corp., (vi) selection of the officers of Reorganized Key Plastics, (vii) the distribution of New Finance Corp. Equity, (viii) the adoption of the Management Retention and Incentive Plan, and (ix) all other actions contemplated by the Prepackaged Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Prepackaged Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Prepackaged Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, the managing member, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Prepackaged Plan (or necessary or desirable to effect the transactions contemplated by the Prepackaged Plan) in the name of and on behalf of the Reorganized Debtors. Such authorizations and approvals shall be effective notwithstanding any requirements under non-

bankruptcy law. The issuance of New Finance Corp. Equity shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or manager (or a manager deputized for purposes thereof) as of the Effective Date.

(e)     Restated Organizational Documents of the Reorganized Debtors. On or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the organizational documents for the Debtors shall also be amended as necessary to satisfy the provisions of the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of managers or directors, as applicable, representing such preferred class in the event of default in the payment of such dividends. On the Effective Date, the managing member or the board of directors of the Reorganized Debtors, as applicable, shall be deemed to have adopted the restated organizational documents for such Reorganized Debtor.

(f)     Boards of Directors and Managing Member of the Reorganized Debtors. On the Effective Date, the operations of Reorganized Key Plastics shall become the general responsibility of its sole member, subject to and in accordance with its restated organizational documents, which shall provide that Reorganized Key Plastics shall continue to operate under the laws of Michigan. On the Effective Date, the operations of Reorganized Finance Corp. shall become the general responsibility of its board of directors, subject to and in accordance with its restated organizational documents, and the term of each member of Finance Corp's current board of directors shall automatically expire. The sole member of Reorganized Key Plastics shall be Reorganized Finance Corp., and the initial board of directors of Reorganized Finance Corp. shall be disclosed in the Prepackaged Plan Supplement.

(g)     Officers the Reorganized Debtors. The officers of the respective Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the officers of Reorganized Finance Corp. shall be determined by its board of directors and the officers of Reorganized Key Plastics shall be determined by its sole member.

**6.3     *Cancellation of Existing Securities.***

As of the Effective Date, the Certificates, if any, evidencing the Extinguished Securities will evidence solely the right to receive the distribution of the consideration, if any, set forth in Article IV hereof.

On the Effective Date, except as otherwise provided for herein, (i) the Extinguished Securities, to the extent not already cancelled, shall be deemed cancelled and of no

further force or effect without any further action on the part of the Bankruptcy Court or any other Person and (ii) the obligations of the Debtors under the Extinguished Securities and under their respective organizational documents, any agreements, indentures or certificates of designations governing the Extinguished Securities shall be terminated and discharged; *provided, however*, that each indenture or other agreement that governs the rights of the holder of a Claim based on the Extinguished Securities and that is administered by an indenture trustee, agent or servicer shall continue in effect solely for the purposes of (i) allowing such indenture trustee, agent or servicer to make the distributions to be made on account of such Claims hereunder and (ii) permitting such indenture trustee, agent or servicer to maintain any rights it may have for fees, costs, and expenses under such indenture or other agreement. Additionally, the cancellation of any indenture shall not impair the rights and duties under such indenture as between the indenture trustee thereunder and the beneficiaries of the trust created thereby.

Any actions taken by an indenture trustee, agent or servicer that are not for the purposes authorized in the Prepackaged Plan shall not be binding upon the Debtors. Except with respect to the making of distributions as provided in the preceding paragraph, the Reorganized Debtors may, with or without cause, terminate any indenture or other governing agreement and the authority of any indenture trustee, agent or servicer to act thereunder at any time by giving five (5) Business Days' written notice of termination to the indenture trustee, agent, or servicer. If distributions hereunder on account of Allowed Senior Notes Claims have not been completed at the time of termination of the indenture or other governing agreement, the Reorganized Debtors shall designate a disbursing agent to act in place of the indenture trustee, agent or servicer, and the provisions of Articles VI and VII hereof shall be deemed to apply to the new disbursing agent.

### 6.4 *Surrender of Existing Securities.*

On or before the Distribution Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall surrender such Certificate to the Disbursing Agent, or, with respect to the Senior Notes, the Indenture Trustee, and such Certificate shall be cancelled. No distribution of property hereunder shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the Indenture Trustee, as the case may be, or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the Indenture Trustee, as the case may be. Any such holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the Indenture Trustee, as the case may be, prior to the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims or Equity Interests in respect of such Certificate and shall not participate in any distribution hereunder, and (i) all Cash in respect of such forfeited distribution, including interest accrued thereon, shall revert to the Reorganized Debtors and (ii) all New Finance Corp. Equity in respect of such forfeited distribution shall be cancelled notwithstanding any federal or escheat laws to the contrary.

### 6.5 *Issuance and Contribution of New Securities.*

(a)     As of the Effective Date, the issuance by Reorganized Key Plastics of 1,000,000 common unit shares of New Key Plastics Equity to holders of Allowed Senior Note Claims is hereby authorized without further need for any corporate or limited liability company action. New Key Plastics Equity authorized pursuant to this Section 6.5 shall be issued by Reorganized Key Plastics without further need for any corporate or limited liability company action.

(b)     As of the Effective Date, following the issuance of New Key Plastics Equity to holders of Allowed Senior Notes Claims making the Equity Election under this Prepackaged Plan, the contribution of 100% of the New Key Plastics Equity by such holders of Allowed Senior Notes to Reorganized Finance Corp. is hereby authorized without further need for any action by any such holders.

(c)     As of the Effective Date, following the contribution of all of the New Key Plastics Equity by the holders of Allowed Senior Notes Claims making the Equity Election under this Prepackaged Plan, the issuance by Reorganized Finance Corp. of 1,000,000 shares of New Finance Corp. Equity to such holders in exchange for such New Key Plastics Equity is hereby authorized without further need for any corporate action. New Finance Corp. Equity authorized pursuant to this Section 6.5 shall be issued by Reorganized Finance Corp. without further need for any corporate action.

### 6.6 *Cancellation of Liens.*

Except as otherwise provided herein, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

### 6.7 *Rights Offering.*

Pursuant to the Rights Offering, each holder of Allowed Senior Notes Claims making the Equity Election will have Rights to subscribe for an aggregate amount of up to 350,000 shares of New Key Plastics Equity for an aggregate purchase price of $20 million. Wayzata has committed to purchase all shares of New Key Plastics Equity offered, but not otherwise purchased, pursuant to the Rights Offering pursuant to the Backstop Purchase Agreement. All New Key Plastics Equity purchased pursuant to the Rights Offering and the Backstop Purchase Agreement will subsequently be contributed to Reorganized Finance Corp. in exchange for an equivalent amount of New Finance Corp. Equity.

### 6.8 Preservation of Rights of Action; Settlement of Litigation Claims.

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Prepackaged Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person or entity without the approval of the Bankruptcy Court. The Reorganized Debtors or their successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

### 6.9 Effectuating Documents; Further Transactions.

The chairman of the board of directors, president, chief financial officer, any executive vice-president or senior vice-president, or any other appropriate officer of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Prepackaged Plan. The secretary or assistant secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

### 6.10 Exemption from Certain Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Prepackaged Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Prepackaged Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**6.11** *Dissolution of any Statutory Committees and Cessation of Fee and Expense Payment.*

Any statutory committees appointed in the Debtors' Chapter 11 Cases shall be dissolved on the Effective Date. The Reorganized Debtors shall no longer be responsible for paying any fees and expenses incurred by any statutory committees after the Effective Date, nor any fees or expenses to the advisors of Wayzata.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1** *Date of Distributions on Account of Allowed Claims.*

Unless otherwise provided herein, any distributions and deliveries to be made under the Prepackaged Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under the Prepackaged Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. For avoidance of doubt, New Finance Corp. Equity and New Key Plastics Equity shall be distributed pursuant to the Rights Offering and the Prepackaged Plan.

**7.2** *Sources of Cash for the Prepackaged Plan Distribution.*

Except as otherwise provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Debtors' and the Reorganized Debtors' operations and cash on hand, the proceeds from the Rights Offering and the Exit Facility, *provided* that this sentence does not limit or prohibit the Reorganized Debtors, in their discretion, from entering into one or more post-Effective Date credit facilities to fund additional payment or liquidity requirements.

**7.3** *Disbursing Agent.*

All distributions under the Prepackaged Plan shall be made by the Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**7.4** *Rights and Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Prepackaged Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Prepackaged Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5 *Expenses of the Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

### 7.6 *Record Date for Distribution.*

At the close of business on the Distribution Record Date, the transfer ledgers or registers for the Senior Notes and Series A Units shall be closed, and there shall be no further changes in the record holders of those existing securities. The Reorganized Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any Senior Notes and Series A Units occurring after the Distribution Record Date, and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers or registers for the Senior Notes and Series A Units as of the close of business on the Distribution Record Date.

### 7.7 *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the Debtors, unless the applicable Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

### 7.8 *Manner of Payment Under Prepackaged Plan.*

(a) The Indenture Trustee shall be deemed to be the holder of all Senior Notes Claims for purposes of distributions to be made hereunder, and all distributions on account of such notes shall be made to or on behalf of the Indenture Trustee. The Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed Senior Notes Claims. As soon as practicable following compliance with the requirements set forth in Section 6.4 hereof, the Indenture Trustee shall arrange to deliver such distributions to or on behalf of such noteholders.

(b)    All distributions of Cash under the Prepackaged Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

(c)    At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.9    *Fractional Shares.*

No fractional shares of New Key Plastics Equity or New Finance Corp. Equity shall be distributed and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Prepackaged Plan on account of an Allowed Senior Notes Claim would otherwise result in the issuance of a number of shares of New Key Plastics Equity or New Finance Corp. Equity that is not a whole number, the actual distribution of shares of New Key Plastics Equity or New Finance Corp. Equity shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Key Plastics Equity or New Finance Corp. Equity to be distributed to holders of Allowed Senior Notes Claims shall be adjusted as necessary to account for the foregoing rounding.

### 7.10    *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claim any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim they may have against such claimant. Notwithstanding the foregoing, the Debtors shall have waived setoff and recoupment rights against the DIP Lender with respect to the DIP Facility.

### 7.11    *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 7.12    *Allocation of Payments under the Prepackaged Plan.*

In the case of distributions with respect to Class 1 and Class 2 Claims, pursuant to the Prepackaged Plan, the amount of any Cash and the fair market value of any other consideration received by the holder of such Claim will be allocable first to the principal amount of such Claim (as determined for federal income tax purposes) and then, to the extent of any excess, the remainder of the Claim.

### 7.13  *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### ARTICLE VIII

### PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PREPACKAGED PLAN

### 8.1  *Disputed Claims.*

Holders of Claims and Equity Interests need not file proofs of claim with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Prepackaged Plan.  On and after the Effective Date, except as otherwise provided herein, all Claims will be paid in the ordinary course of business of the Reorganized Debtors.  If the Debtors dispute any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced, *provided, however,* that the Debtors may elect, at their sole option, to object under section 502 of the Bankruptcy Code with respect to any proof of claim filed by or on behalf of a holder of a Claim.

### 8.2  *Objections to Claims.*

Except insofar as a Claim is Allowed under the Prepackaged Plan, the Debtors, the Reorganized Debtors or any other party in interest shall be entitled to object to Claims.  Any objections to Claims shall be served and filed (i) on or before the ninetieth (90th) day following the later of (x) the Effective Date and (y) the date that a proof of Claim is filed or amended or Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (ii) such later date as ordered by the Bankruptcy Court.

### 8.3  *No Distributions Pending Allowance.*

If the Debtors object to any Claim, no payment or distribution provided under the Prepackaged Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.4  *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, respectively, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, respectively, in accordance with the provisions of the Prepackaged Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the holder

of such Claim the distribution (if any) to which such holder is entitled under the Prepackaged Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE IX

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

### 9.1 *Assumption of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) was previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Prepackaged Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

### 9.2 *Inclusiveness.*

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

### 9.3 *Payments Related to Assumption of Contracts and Leases.*

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. If there is a dispute regarding (i) the nature or

amount of any Cure; (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### 9.4    *Rejected Contracts and Leases.*

Except as otherwise provided in the Prepackaged Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, none of the executory contracts and unexpired leases to which the Debtors are a party shall be rejected hereunder; provided, however, that the Debtors reserve the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which any Debtor is party.

### 9.5    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Claims arising out of the rejection of executory contracts and unexpired leases must be served upon the applicable Debtor and its counsel within 30 days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Confirmation Date, *provided* that any such Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date but before the lapse of time set forth in clause (ii) of this Section shall be served on the Reorganized Debtors. Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

### 9.6    *Compensation and Benefit Plans and Treatment of Retirement Plan.*

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and employee benefit plans of the Debtors, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Prepackaged Plan. The Debtors' obligations under such plans and programs shall survive confirmation of the Prepackaged Plan, except for (i) executory contracts or benefit plans specifically rejected pursuant to the Prepackaged Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

### 9.7    *Insurance Policies.*

Notwithstanding anything contained in the Prepackaged Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, shall be continued. Nothing contained in this Section shall constitute or be deemed a waiver of any cause of action

that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' insurance policies.

## ARTICLE X

## CONDITIONS PRECEDENT
## TO EFFECTIVE DATE

**10.1** *Conditions Precedent to Effective Date of Prepackaged Plan.*

The occurrence of the Effective Date of the Prepackaged Plan is subject to satisfaction of the following conditions precedent:

(a) <u>Confirmation Order</u>. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. The Confirmation Order in the Chapter 11 Cases shall be in form and substance reasonably satisfactory to the Debtors and to Wayzata in its capacity as a holder of Senior Notes Claims and as a lender under the DIP Facility.

(b) <u>Execution and Delivery of Other Documents</u>. All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Prepackaged Plan shall have been effected, including the Restructuring Agreement, the documents comprising the Prepackaged Plan Supplement and, in each case, shall have been (i) approved and (ii) duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

(c) <u>Regulatory Approvals</u>. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Prepackaged Plan and that are required by law, regulations or order.

(d) <u>Consents</u>. All authorizations, consents and approvals determined by the Debtors to be necessary to implement the terms of the Prepackaged Plan shall have been obtained.

(e) <u>Corporate Formalities</u>. The restated certificate of incorporation of Reorganized Finance Corp. shall be filed with the Secretary of State for Delaware and the restated certificate of formation of Reorganized Key Plastics L.L.C. shall be filed with the Secretary of State for Michigan, in each case contemporaneously with the Effective Date.

(f) <u>Rights Offering</u>. All conditions to the consummation of the Rights Offering, other than those conditions relating to the confirmation of the Prepackaged Plan, shall have been satisfied or waived on or before the Effective Date.

(g) <u>Proceeds from the Rights Offering and the Exit Facility</u>. Proceeds of the Rights Offering and the Exit Facility shall be made available to the Reorganized Debtors

to fund, among other things, all Cash distributions under the Prepackaged Plan, pay fees and expenses in connection with the Chapter 11 Cases, repay the DIP Facility on the Effective Date and provide incremental liquidity to Reorganized Key Plastics.

(h)     Other Acts. Any other actions the Debtors determine are necessary to implement the terms of the Prepackaged Plan shall have been taken.

### 10.2   *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1 hereof may be waived, in whole or in part, by the Debtors without notice or order of the Bankruptcy Court, provided that the Majority Noteholders give their prior written consent to any such waiver, which consent shall not be unreasonably withheld.

### 10.3   *Effect of Failure of Conditions.*

If the conditions specified in Section 10.1 hereof have not been satisfied or waived in the manner provided in Section 10.2 hereof by February 28, 2009, unless otherwise waived by the Debtors with the prior written consent of the Majority Holders, then: (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Prepackaged Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all amounts held in escrow for the purchase of New Key Plastics Equity pursuant to the Rights Offering shall be returned to the holders of Senior Notes Claims who submitted such amounts; and (v) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Prepackaged Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors and the Prepackaged Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon counsel for Wayzata, counsel for any statutory committee, and the United States Trustee.

### 10.4   *Reservation of Rights.*

The Prepackaged Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Prepackaged Plan, any statement or provision contained in the Prepackaged Plan, or action taken by the Debtors with respect to the Prepackaged Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

### 10.5   *Substantial Consummation.*

Substantial consummation of the Prepackaged Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

# ARTICLE XI

## EFFECT OF CONFIRMATION

### 11.1  *Revesting of Assets.*

Except as otherwise provided in the Prepackaged Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. The property of the Debtors' Estates, together with any property of the Debtors that is not property of their Estates and that is not specifically disposed of pursuant to the Prepackaged Plan, shall revest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, encumbrances, Equity Interests, charges, and Liens except as specifically provided in the Prepackaged Plan or the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtors may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses incurred after the Effective Date.

### 11.2  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Prepackaged Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Prepackaged Plan and whether or not such holder has accepted the Prepackaged Plan.

### 11.3  *Discharge of the Debtors.*

Except to the extent otherwise provided herein, the treatment of all Claims against or Equity Interests in the Debtors under the Prepackaged Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon, from and after the Petition Date, or against their Estate or properties or interests in property. Except as otherwise provided in the Prepackaged Plan, upon the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full in exchange for the consideration provided under the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan, all entities shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### 11.4 *Exculpation.*

The Reorganized Debtors, the members of the Majority Holders, and any and all of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, advisors, attorneys, or agents, or any of their successors or assigns, shall not have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the solicitation of acceptances of the Prepackaged Plan, the pursuit of confirmation of the Prepackaged Plan, the funding of the Prepackaged Plan, the consummation of the Prepackaged Plan, or the administration of the Prepackaged Plan or the property to be distributed under the Prepackaged Plan, except for their willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and, in all respects, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Prepackaged Plan.

Notwithstanding any other provision hereof, no holder of a Claim or Equity Interest, no other party-in-interest, none of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, their Estates, any Committee, each of the Majority Holders, any holder of Eligible Claims and Equity Interests, or any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the solicitation of acceptances of the Prepackaged Plan, the pursuit of confirmation of the Prepackaged Plan, the consummation of the Prepackaged Plan, or the administration of the Prepackaged Plan or the property to be distributed under the Prepackaged Plan, except for their willful misconduct or gross negligence.

### 11.5 *Releases by the Debtors.*

*On the Effective Date, effective as of the Confirmation Date, the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all causes of action which they have or may have against any present or former member, manager, officer, director, or employee of the Debtors; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of (i) any express contractual obligation owing by any such member, manager, officer, director, or employee of the Debtors or (ii) the willful misconduct or gross negligence of such member, manager, officer, director, or employee in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of Confirmation of the Prepackaged Plan, the consummation of the Prepackaged Plan, the administration of the Prepackaged Plan, or the property to be distributed under the Prepackaged Plan.*

*On the Effective Date, effective as of the Confirmation Date, the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any*

and all claims and causes of action, including any claims or causes of action under Chapter 5 of the Bankruptcy Code, which they have or may have against any of the Majority Holders or any holder of Senior Notes Claims who is a signatory to the Restructuring Agreement and their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives and their respective property in connection with actions taken as or in their capacity as a holder of Senior Notes.

### 11.6    Releases By Holders of Claims and Equity Interests.

*Except for the right to enforce the Prepackaged Plan, each Person who votes to accept the Prepackaged Plan, or who, directly or indirectly, is entitled to receive a distribution under the Prepackaged Plan, including Persons entitled to receive a distribution via an attorney, agent, indenture trustee or securities intermediary, shall be deemed to forever release, waive and discharge the Debtors, Reorganized Debtors, each member of the Majority Holders and each of their respective members, managers, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives and their respective property of and from any and all Claims, demands, causes of action and the like, relating to the Debtors or their affiliates, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise, subject to a limited carve-out solely for criminal acts and fraud.*

### 11.7    Waiver of Avoidance Actions.

(a)    Effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the released parties relating to distributions made on account of interest or other obligations under and relating to the Senior Notes.

### 11.8    Term of Injunctions or Stays.

(a)    *Except as otherwise expressly provided herein, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor, or against the property or*

*interests in property of any Reorganized Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to Section 11.5 or 11.6 of the Prepackaged Plan.*

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 11.9    *Indemnification Obligations.*

Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' certificate of formation, certificate of incorporation, bylaws, or other organizational documents, applicable law or other applicable agreement as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of members, managers, directors, or officers who were members, managers, directors or officers of the Debtors at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Petition Date.  Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

As of the Effective Date, each Debtors' respective organizational documents shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, members, managers, directors, and officers who were members, managers, directors, or officers of such Debtor at any time prior to the Effective Date at least to the same extent as those in effect on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtors shall not amend and/or restate such organizational documents before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such members', managers', directors', or officers' rights under this Section 11.9.

In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, and all members, managers, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

**11.10  *Preservation of Claims.***

Except as otherwise provided herein, including Sections 11.5, 11.6 and 11.7 as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall become assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Causes of Action for the benefit of the Estates of the Debtors. After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon, or dismiss all such Causes of Action without approval of the Bankruptcy Court.

**11.11  *Compromise of Controversies.***

In consideration for the distributions and other benefits provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Prepackaged Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Prepackaged Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Prepackaged Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim and equity interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To issue such orders in aid of execution of the Prepackaged Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     To consider any amendments to or modifications of the Prepackaged Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Prepackaged Plan, the Confirmation Order, the documents comprising the Prepackaged Plan Supplement, any transactions or payments contemplated by the Restructuring Agreement including the Prepackaged Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the discharges granted under Section 11.3 of the Prepackaged Plan;

(m)     To hear and determine all disputes involving or in any manner implicating the exculpation provisions granted under Section 11.4 of the Prepackaged Plan;

(n)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Prepackaged Plan; and

(o)     To enter a final decree(s) closing the Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS

### 13.1   *Payment of Statutory Fees.*

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

### 13.2 Filing of Additional Documents.

The Debtors or the Reorganized Debtors, as applicable, may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Prepackaged Plan.

### 13.3 Schedules and Exhibits Incorporated.

All exhibits and schedules to this Prepackaged Plan, including the Prepackaged Plan Supplement, are incorporated into and are a part of the Prepackaged Plan as if fully set forth herein.

### 13.4 Intercompany Claims.

Notwithstanding anything to the contrary herein, on or after the Effective Date, any debts held by a Debtor against another Debtor will be adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, or discharged to the extent reasonably determined appropriate by the Debtors taking into account the economic condition of the applicable Reorganized Debtor.

### 13.5 Amendment or Modification of the Prepackaged Plan.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Prepackaged Plan may be proposed in writing by the Debtors at any time prior to or after the Confirmation Date. Holders of Claims that have accepted the Prepackaged Plan shall be deemed to have accepted the Prepackaged Plan, as altered, amended, or modified, *provided* that the Majority Holders have consented in writing to the proposed alteration, amendment, or modification and such alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder; and *provided, further, however*, that any holders of Claims who were deemed to accept the Prepackaged Plan because such Claims were unimpaired shall continue to be deemed to accept the Prepackaged Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

### 13.6 Inconsistency.

In the event of any inconsistency among the Prepackaged Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Prepackaged Plan shall govern. In the event of any inconsistency between the Prepackaged Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.7 Section 1125(e) of the Bankruptcy Code.

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Prepackaged Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and each of their respective successors, predecessors, control persons, members, affiliates, agents, directors, officers, employees,

investment bankers, financial advisors, accountants, attorneys and other professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities under the Prepackaged Plan. Accordingly, such entities and individuals shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan.

### 13.8 *Compliance with Tax Requirements.*

In connection with the Prepackaged Plan and all instruments issued in connection herewith and distributed hereunder, any party issuing any instruments or making any distribution under the Prepackaged Plan, including any party described in Sections 6.5 and 7.3 hereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Prepackaged Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

### 13.9 *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Prepackaged Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Prepackaged Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.10 *Expedited Tax Determination.*

The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for

any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 13.11 *Severability of Provisions in the Prepackaged Plan.*

If, prior to Confirmation, any term or provision of the Prepackaged Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (to which request the Majority Holders shall have consented), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Prepackaged Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Prepackaged Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.12 *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Prepackaged Plan or Prepackaged Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

### 13.13 *No Admissions.*

If the Effective Date does not occur, the Prepackaged Plan shall be null and void in all respects, and nothing contained in the Prepackaged Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, any Debtor, (b) prejudice in any manner the rights of any Debtor or any other party in interest, or (c) constitute an admission of any sort by any Debtor or other party in interest.

### 13.14 *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

KEY PLASTICS L.L.C.
21700 Haggerty Road
Suite 100N

Northville, Michigan 48167
Attention: Chief Financial Officer
Telephone: (248) 449-6100
Facsimile: (248) 449-4105

with copies to:

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Attn: Stephen A. Youngman
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

and

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Attn: Mark D. Collins
Telephone: (302) 651-7700
Facsimile: (302) 654-7701

Dated:  December 15, 2008

Respectfully submitted,

**KEY PLASTICS, L.L.C.**

By:_____
    Name:  John Wilson
    Title:  Chief Financial Officer


**KEY PLASTICS FINANCE CORP.**

By:_____
    Name:  John Wilson
    Title:  Chief Financial Officer

COUNSEL:

_____
Mark D. Collins
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

    and

Stephen A. Youngman
Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
(214) 746-7700

ATTORNEYS FOR THE DEBTORS