**Exhibit L**

THIRD AMENDED AND RESTATED OPERATING

AGREEMENT

OF

KEY PLASTICS L.L.C.,

a Michigan Limited Liability Company

Dated as of [_____], 2009

# TABLE OF CONTENTS

Page

ARTICLE 1 ORGANIZATIONAL MATTERS ..................................................................2

    1.1    Issuance of Interests ...............................................................................................2
    1.2    General ...................................................................................................................2
    1.3    Name .....................................................................................................................3
    1.4    Principal Place of Business; Other Places of Business .........................................3
    1.5    Business Purpose and Authority ............................................................................3
    1.6    Certificate of Formation; Filings ............................................................................3
    1.7    Fictitious Business Name Statements ...................................................................3
    1.8    Designated Agent for Service of Process ..............................................................3
    1.9    Term ......................................................................................................................3
    1.10   Members ...............................................................................................................3

ARTICLE 2 DEFINITIONS ...................................................................................................4

    2.1    "Act" ......................................................................................................................4
    2.2    "Affiliate" ..............................................................................................................4
    2.3    "Agreement" ..........................................................................................................4
    2.4    "Articles" ...............................................................................................................4
    2.5    "Backstop Agreement" ..........................................................................................4
    2.6    "Backstop Party" ...................................................................................................4
    2.7    "Backstop Purchase" .............................................................................................4
    2.8    "Bankruptcy Code" ...............................................................................................4
    2.9    "Bankruptcy Court" ..............................................................................................4
    2.10   "Certificate" ...........................................................................................................4
    2.11   "Company" ............................................................................................................4
    2.12   "Debtors" ...............................................................................................................4
    2.13   "Effective Date" ....................................................................................................4
    2.14   "Finance Corp" ......................................................................................................4
    2.15   "Member" ..............................................................................................................4
    2.16   "Member Indemnified Party" ................................................................................4
    2.17   "New Corp Equity" ...............................................................................................4
    2.18   "New Key Plastics Equity" ...................................................................................5
    2.19   "Officers" ..............................................................................................................5
    2.20   "Operating Agreement" ........................................................................................5
    2.21   "Person" ................................................................................................................5
    2.22   "Plan" ....................................................................................................................5
    2.23   "Related Person" ...................................................................................................5
    2.24   "Restructuring" .....................................................................................................5
    2.25   "Rights Offering" ..................................................................................................5
    2.26   "Senior Notes" ......................................................................................................5
    2.27   "Transfer" ..............................................................................................................5

ARTICLE 3 NEW KEY PLASTICS EQUITY; MEMBERS .................................................................5

    3.1    New Key Plastics Equity .................................................................................5
    3.2    Limited Liability of Members; Indemnification of Member by Company..............6
    3.3    No Recourse.....................................................................................................6

ARTICLE 4 DISTRIBUTIONS ...................................................................................................7

    4.1    Distributions.....................................................................................................7

ARTICLE 5 OPERATIONS AND MANAGEMENT ..................................................................7

    5.1    Management.....................................................................................................7
    5.2    Written Consent in Lieu of Meeting ...............................................................7
    5.3    Power to Act for the Company .......................................................................7
    5.4    Other Activities................................................................................................7

ARTICLE 6 DISSOLUTION, LIQUIDATION, AND TERMINATION OF THE
    COMPANY......................................................................................................8

    6.1    Limitations.......................................................................................................8
    6.2    Exclusive Causes ............................................................................................8
    6.3    Effect of Dissolution .......................................................................................8

ARTICLE 7 MISCELLANEOUS ................................................................................................8

    7.1    Amendments ...................................................................................................8
    7.2    Tax Matters .....................................................................................................8
    7.3    Governing Law ...............................................................................................8
    7.4    Construction....................................................................................................9
    7.5    Captions – Pronouns ......................................................................................9
    7.6    Binding Effect.................................................................................................9
    7.7    Severability.....................................................................................................9
    7.8    Conflict with Plan ..........................................................................................9
    7.9    Counterparts....................................................................................................9

Exhibit A – Member, Notice Address, New Key Plastics Equity

# THIRD AMENDED AND RESTATED OPERATING AGREEMENT
# OF
# KEY PLASTICS L.L.C.

**THIS THIRD AMENDED AND RESTATED OPERATING AGREEMENT** (this "**Agreement**") is made and entered into as of the [__] of [_____], 2009, by Key Plastics Corporation, a Delaware corporation, as a post-confirmation entity reorganized under the Plan, as the sole member (the "**Member**") of the Company.

WHEREAS, Key Plastics, L.L.C., a Michigan limited liability company (the "**Company**"), was initially formed on September 17, 1996, in accordance with the Michigan Limited Liability Company Act (the "**Act**"), pursuant to that certain Operating Agreement, dated as of September 16, 1996, by and among the Company (then known as Key Plastics Technology, L.L.C.), Key Plastics, Inc., a Michigan corporation, and David C. Benoit (as amended by the second amended and restated operating agreement of the Company dated as of April 26, 2001, the "**Operating Agreement**");

WHEREAS, on December 15, 2008, the Company and certain of its subsidiaries (the "**Debtors**") filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. sections 101 et seq., in the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the jointly administered chapter 11 cases of the Debtors (the "**Bankruptcy Court**");

WHEREAS, pursuant to that certain plan of reorganization filed with the Bankruptcy Court on December 15, 2008, including all schedules and exhibits thereto (as may be amended, supplemented or modified from time to time, the "**Plan**"), on the Effective Date (as defined in the Plan) and in the following sequence, all as more particularly described in the Plan, (i) the Company received a discharge of certain indebtedness and other obligations, (ii) all of the current equity interests of the Company were liquidated and cancelled, and (iii) the Company issued new common unit shares ("**New Key Plastics Equity**") pursuant to the Plan as of the Effective Date;

WHEREAS, Key Plastics Finance Corp., a Delaware corporation ("**Finance Corp**"), prior to the Effective Date, was a wholly-owned subsidiary of the Company, formed for the sole purpose of serving as a co-issuer of the Senior Notes and has no operations, employees or assets;

WHEREAS, the Debtors do not have the resources to pay all of their existing note obligations and the Restructuring will improve the Company's financial condition and overall credit worthiness and allow it to move forward with an improved financial and operational structure;

WHEREAS, under the Plan, each holder of Senior Notes was entitled to receive, at its election, either (a) its pro rata share of 65% of the fully-diluted New Key Plastics Equity, which was automatically contributed to the Member in exchange for an equal percentage of new common stock issued by the Member, par value $0.01 per share ("**New Corp Equity**"), to the

1

holders of Allowed Senior Notes Claims (as defined in the Plan) in exchange for such holders' New Key Plastics Equity, or (b) cash equal to 16% of the face value of its Senior Notes;

WHEREAS, those holders of Senior Notes who elected to receive their pro rata shares of the 65% of the fully diluted New Key Plastics Equity were entitled to subscribe for their pro rata share of not more than 35% of the fully diluted New Key Plastics Equity, pursuant to an offering made to holders of Senior Notes of rights to purchase up to 350,000 common unit shares of New Key Plastics Equity (the "**Rights Offering**");

WHEREAS, pursuant to the Backstop Purchase and Contribution Agreement, dated December 15, 2008 (the "**Backstop Agreement**") by and among the Debtors and Wayzata Opportunities Fund II, L.P. and Wayzata Opportunities Fund Offshore II, L.P. (each, a "**Backstop Party**" and collectively the "**Backstop Parties**"), each Backstop Party agreed, severally and not jointly, subject to the terms and conditions set forth in the Backstop Agreement, to purchase any and all New Key Plastics Equity offered in the Rights Offering but not subscribed for (the "**Backstop Purchase**") in the proportion of Rights Offering Interests (as defined in the Backstop Agreement) to be purchased by such Backstop Party as set forth opposite such Backstop Party's name in Schedule A attached to the Backstop Agreement and incorporated therein by reference; and

WHEREAS, 100% of the New Key Plastics Equity acquired by the holders of Senior Notes under the Plan, the Rights Offering and the Backstop Agreement, immediately upon acquisition, was automatically contributed to the Member, and without further action, in exchange for an equivalent amount of New Corp Equity;

WHEREAS, upon the date hereof (the "**Effective Date**") 100% of the New Corp Equity was issued to former holders of Senior Notes and 100% of the New Key Plastics Equity is held by the Member.

NOW, THEREFORE, in order in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Member, pursuant to and in accordance with the Act, hereby agrees to amend and restate the Operating Agreement as follows:

## ARTICLE 1
## ORGANIZATIONAL MATTERS

1.1     Issuance of Interests. The Member agrees that pursuant to the Plan and on the Effective Date, the Company is issuing the New Key Plastics Equity, 100% of which will be owned by the Member. For good and valuable consideration, the receipt of which is hereby acknowledged, and pursuant to the Plan, the Company hereby issues a limited liability interest in the Company representing 100% of the outstanding limited liability interests of the Company. Limited liability interests in the Company may or may not be certificated, as determined by the Member.

1.2     General. The rights and liabilities of the Member shall be as provided in the Act, except as otherwise expressly provided herein. In the event of any inconsistency

between any terms and conditions contained in this Agreement and any non-mandatory provisions of the Act, the terms and conditions contained in this Agreement shall govern.

1.3  Name. The name of the Company shall be Key Plastics, L.L.C. The Company may also conduct business at the same time under one or more fictitious names if the Member determines that such is in the best interests of the Company. The Member may change the name of the Company, from time to time, in accordance with applicable law.

1.4  Principal Place of Business; Other Places of Business. The principal place of business of the Company shall be located at such place as the Member may from time to time designate in writing. The Company may maintain offices and places of business at such other place or places, within or outside the State of Michigan, as the Member deems advisable.

1.5  Business Purpose and Authority. The purpose of the Company is to conduct any activity in which a limited liability company may lawfully engage pursuant to the Act. The Company shall have the power and authority to take any and all actions necessary, appropriate, advisable, convenient or incidental to or for such purposes.

1.6  Certificate of Formation; Filings. The Member has caused an authorized representative to execute and file Articles of Organization (the "**Articles**") in the Office of the Michigan Department of Consumer & Industry Services as required by the Act. The Member shall cause any duly authorized amendments to the Articles to be filed in the Office of the Michigan Department of Consumer & Industry Services in a form prescribed by the Act. The Member shall cause to be made such additional filings and recordings as the Member deems necessary or advisable. The Articles may be amended by the Member.

1.7  Fictitious Business Name Statements. Following the execution of this Agreement, fictitious business name statements shall be filed and published when and if the Member determines it necessary. Any such statement shall be renewed as required by applicable law.

1.8  Designated Agent for Service of Process. The Company shall continuously maintain a registered office and a designated and duly qualified resident agent for service of process on the Company in the State of Michigan.

1.9  Term. The Company commenced on the date that the Articles was filed with the Office of the Michigan Department of Consumer & Industry Services, and shall continue until terminated pursuant to this Agreement.

1.10  Members. Key Plastics Corporation is the sole member of the Company. The Member was admitted to the Company as a member of the Company upon its execution of this Agreement.

NY\1475379.1
NY\1475379.3RLF1-3361320-1

# ARTICLE 2
# DEFINITIONS

Capitalized words and phrases used and not otherwise defined elsewhere in this Agreement shall have the following meanings:

2.1  "Act" is defined in the Recitals.

2.2  "Affiliate" means, with reference to a specified Person: (a) a Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the specified Person, (b) any Person that is an officer, partner or trustee of, or serves in a similar capacity with respect to, the specified Person, or for which the specified Person is an officer, partner or trustee, or serves in a similar capacity, or (c) with respect to any natural Person, any member of the Immediate Family of the specified Person.

2.3  "Agreement" is defined in the Preamble.

2.4  "Articles" means the Articles of Organization of the Company filed under the Act in the Office of the Michigan Department of Consumer & Industry Services for the purpose of forming the Company as a Michigan limited liability company, and any duly authorized, executed and filed amendments or restatements thereof.

2.5  "Backstop Agreement" is defined in the Recitals.

2.6  "Backstop Party" is defined in the Recitals.

2.7  "Backstop Purchase" is defined in the Recitals.

2.8  "Bankruptcy Code" is defined in Paragraph 3.1.2.

2.9  "Bankruptcy Court" is defined in the Recitals.

2.10 "Certificate" is defined in Paragraph 3.2.2.

2.11 "Company" is defined in the Recitals.

2.12 "Debtors" is defined in the Recitals.

2.13 "Effective Date" is defined in the Recitals.

2.14 "Finance Corp" is defined in the Recitals.

2.15 "Member" is defined in the Recitals.

2.16 "Member Indemnified Party" is defined in Paragraph 3.2.2.

2.17 "New Corp Equity" is defined in the Recitals.

4

2.18 "New Key Plastics Equity" is defined in the Recitals.

2.19 "Officers" is defined in Paragraph 5.1.

2.20 "Operating Agreement" is defined in the Recitals.

2.21 "Person" means and includes an individual, a corporation, a partnership, a limited liability company, a trust, an unincorporated organization, a government or any department or agency thereof, or any entity similar to any of the foregoing.

2.22 "Plan" is defined in the Recitals.

2.23 "Related Person" is defined in Paragraph 3.3.

2.24 "Restructuring" means, collectively, the transactions described in the Plan.

2.25 "Rights Offering" is defined in the Recitals.

2.26 "Senior Notes" means the 11¾% senior secured notes due 2013 issued by the Company and Finance Corp. in the aggregate principal amount of $115 million.

2.27 "Transfer" means, with respect to any interest in the Company, a sale, conveyance, exchange, assignment, pledge, encumbrance, gift, bequest, hypothecation or other transfer or disposition by any other means, whether for value or no value and whether voluntary or involuntary (including, without limitation, by operation of law), or an agreement to do any of the foregoing.

## ARTICLE 3
## NEW KEY PLASTICS EQUITY; MEMBERS

3.1 New Key Plastics Equity.

3.1.1 The name and address of the Member and the New Key Plastics Equity held by the Member are set forth on Exhibit "A" attached hereto and incorporated herein. Limited liability company interests in the Company are represented by common unit shares of New Key Plastics Equity issued by the Company.

3.1.2 To the extent prohibited by Section 1123 of Chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), the Company shall not issue non-voting equity securities; provided, however, that the foregoing (i) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as such Section 1123 is in effect and applicable to the Company and (iii) may be amended or eliminated in accordance with applicable law as from time to time in effect.

3.2 <u>Limited Liability of Members; Indemnification of Member by Company</u>.

3.2.1 Except as otherwise required by any non-waivable provision of the Act or other applicable law: (a) the Member shall not be personally liable in any manner whatsoever for any debt, liability or other obligation of the Company, whether such debt, liability or other obligation arises in contract, tort, or otherwise; and (b) the Member shall not in any event have any liability whatsoever in excess of the amount of any wrongful distribution to the Member, if, and only to the extent, the Member has actual knowledge (at the time of the distribution) that such distribution is made in violation of Section 307 of the Act.

3.2.2 Neither the Member, its Affiliates, nor any of their respective Related Persons (defined below) (collectively, "**Member Indemnified Parties**", and each individually, a "**Member Indemnified Party**") shall, by virtue of the Member's status as the Member, have any liability to any Person under the Certificate of the Company, this Agreement, the Rights Offering, any applicable law, or otherwise, except liability to the Company in respect of obligations expressly arising hereunder or expressly required by law.

3.2.3 To the fullest extent permitted by law, in any threatened, pending or completed action, suit or proceeding brought by a Person other than the Company, each Member Indemnified Party shall be fully protected and indemnified and held harmless by the Company against all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, proceedings, costs, expenses and disbursements of any kind or nature whatsoever (including reasonable attorneys' fees, costs of investigation, fines, judgments and amounts paid in settlement, but excluding consequential losses or damages) actually incurred by such Member Indemnified Party in connection with such action, suit or proceeding by virtue of the Member's status as the Member or with respect to any action or omission taken or suffered in good faith by it in connection with the Member's status as the Member, other than liabilities and losses resulting from the bad faith, willful misconduct or fraud of such Member Indemnified Party. The indemnification provided by this <u>Paragraph</u> 3.2.3 shall be recoverable only out of the assets of the Company, and the Member shall not have any personal liability (or obligation to contribute capital to the Company or make any other financial accommodation available) on account thereof. No amendment to this <u>Paragraph</u> 3.2.3 will impair the rights of any Person arising at any time with respect to events occurring prior to such amendment.

3.3 <u>No Recourse</u>. Notwithstanding anything that may be expressed or implied in this Agreement, and to the fullest extent permitted by law, the Company and the Member covenant, agree and acknowledge that no Person other than the Member shall have any obligation hereunder and that, (a) notwithstanding that the Member may be a partnership or limited liability company, no recourse hereunder or under any documents or instruments delivered in connection herewith (including, without limitation, the Purchase Agreement) shall be had against any Affiliates of the Member or any former, current or future, direct or indirect, representative, officer or employee of the Member, any former, current or future, direct or

6

indirect, member or holder of any equity interests or securities of the Member (whether such holder is a limited or general partner, member, stockholder or otherwise), any former, current or future assignee of the Member or any former, current or future representative or assignee of any of the foregoing (each such Person, a "**Related Person**") or any Related Person of any of the Member's Related Persons, whether by the enforcement of any judgment or assessment or by any legal or equitable proceeding or otherwise, and (b) no personal liability whatsoever will attach to, be imposed on or otherwise incurred by any Related Person of the Member or any Related Person of any of the Member's Related Persons under this Agreement, the Rights Offering or any documents or instruments delivered in connection herewith or with the Rights Offering or for any claim based on, in respect of, or by reason of such obligations hereunder or by their creation, except as expressly agreed to in writing.

## ARTICLE 4
## DISTRIBUTIONS

4.1 Distributions. Each distribution of cash or other property by the Company shall be made 100% to the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member if such distribution would violate the Act or other applicable law.

## ARTICLE 5
## OPERATIONS AND MANAGEMENT

5.1 Management. The Company shall be managed by the Member (and any Directors or officers of the Company to whom the Member may delegate duties). All decisions relating to the business, affairs, and properties of the Company shall be made by the Member. The Member may appoint a President and one or more Vice Presidents and such other officers of the Company as the Member may deem necessary or advisable to manage the day-to-day business affairs of the Company (the "**Officers**"). The Member may also appoint managers who are not officers. The Officers and managers shall serve at the pleasure of the Member. To the extent delegated by the Member, the Officers and managers shall have the authority to act on behalf of, bind, and execute and deliver documents in the name and on behalf of the Company. No such delegation shall cause the Member to cease to be a Member.

5.2 Written Consent in Lieu of Meeting. Any action permitted to be taken by the Member may be taken by the Member, without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Member.

5.3 Power to Act for the Company. Except as otherwise expressly provided in this Agreement or required by any non-waivable provision of the Act or other applicable law, no Person other than the Member and such other Persons designated by the Member shall be an agent for the Company or have any right, power, or authority to transact any business in the name of the Company or to act for or on behalf of or to bind the Company.

5.4 Other Activities. The Member and its Affiliates may engage or invest in, and devote their time to, any other business venture or activity of any nature so long as such activity does not violate this Agreement.

7

# ARTICLE 6
# DISSOLUTION, LIQUIDATION, AND TERMINATION OF THE COMPANY

6.1  Limitations.  The Company may be dissolved, liquidated, and terminated only pursuant to the provisions of this Article 6, and the parties hereto do hereby irrevocably waive any and all other rights they may have to cause a dissolution of the Company or a sale or partition of any or all of the Company Assets.

6.2  Exclusive Causes.  Notwithstanding the Act, the following and only the following events shall cause the Company to be dissolved, liquidated, and terminated:

(a)  pursuant to a written instrument executed by the Member;

(b)  at any time there are no members of the Company, unless the Company is continued in accordance with the Act; or

(c)  by judicial dissolution.

In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the property of the Company in an orderly manner), and the property of the Company shall be applied in the manner, and in the order of priority, set forth in the Act.  Any dissolution of the Company other than as provided in this Paragraph 6.2 shall be a dissolution in contravention of this Agreement.

6.3  Effect of Dissolution.  The dissolution of the Company shall be effective on the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until it has been wound up and its assets have been distributed to the Member as provided in this Agreement.  Notwithstanding the dissolution of the Company, prior to the termination of the Company, the business of the Company and the affairs of the Member, as such, shall continue to be governed by this Agreement.

# ARTICLE 7
# MISCELLANEOUS

7.1  Amendments.  This Agreement may be amended or modified from time to time only by a written instrument executed by the Member.  In making any amendments, there shall be prepared and filed by the Member, such documents and certificates as may be required under the Act and under the laws of any other jurisdiction applicable to the Company.

7.2  Tax Matters.  The Company will be treated as disregarded as an entity separate from its owner for federal income tax purposes pursuant to Treasury Regulation Section 301.7701-3(b)(1).

7.3  Governing Law.  This Agreement, including its existence, validity, construction, and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of Michigan without regard to otherwise governing principles of conflicts of law.

7.4     Construction. This Agreement shall be construed as if all parties prepared this Agreement.

7.5     Captions – Pronouns. Any titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the text of this Agreement. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as appropriate.

7.6     Binding Effect. Except as otherwise expressly provided herein, this Agreement shall be binding on and inure to the benefit of the Member, its heirs, executors, administrators, successors and all other Persons hereafter holding, having or receiving an interest in the Company.

7.7     Severability. In the event that any provision of this Agreement as applied to any party or to any circumstance, shall be adjudged by a court to be void, unenforceable or inoperative as a matter of law, then the same shall in no way affect any other provision in this Agreement, the application of such provision in any other circumstance or with respect to any other party, or the validity or enforceability of the Agreement as a whole.

7.8     Conflict with Plan. Notwithstanding the foregoing or any other provision of this Agreement, this Agreement is subject to the Plan, and, in the event of any inconsistency between the Plan and this Agreement, the Plan shall control.

7.9     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one Agreement.

NY\1475379.1
NY\1475379.3RLF1-3361320-1

IN WITNESS WHEREOF, the Member has caused this Agreement to be executed by its duly authorized officer as of the date first above written.

**MEMBER**

KEY PLASTICS CORPORATION

By: _____
Name:
Title:

## Exhibit A

## Member, Notice Address, New Key Plastics Equity

| Member | Notice Address | New Key Plastics Equity |
|---|---|---|
| KEY PLASTICS CORPORATION | | 1,000,000 common unit shares |

Ex. A-1