# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **KEY PLASTICS L.L.C. (7449) and** | : | **Case No. 08-13324 (MFW)** |
| **KEY PLASTICS FINANCE CORP. (6717),** | : | |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |
| | : | **Re: Docket Nos. 11 & 12** |

-------------------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING THE DEBTORS' JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Key Plastics L.L.C. ("Key Plastics") and Key Plastics Finance Corp. ("Finance Corp."), as debtors and debtors in possession (collectively, the "Company" or the "Debtors"), having jointly proposed and filed (A) the Joint Prepackaged Plan of Reorganization of Key Plastics and Finance Corp, Proposed by Key Plastics and Finance Corp, dated and filed with the United States Bankruptcy Court for the District of Delaware (the "Court" or the "Bankruptcy Court") on December 15, 2008 (the "Prepackaged Plan") (Dkt. No. 11),[1] a copy of which is annexed hereto as Exhibit A, and that certain supplement to the Prepackaged Plan, dated and filed with the Court on January 22, 2009 (as the documents contained therein have been or may be further amended or supplemented, the "Plan Supplement") (Dkt. No. 127) and (B)(i) the Disclosure Statement of Key Plastics and Finance Corp., dated November 13, 2008, and filed with the Court on December 15, 2008 (the "Disclosure Statement") (Dkt. No. 12), and

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Prepackaged Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

(ii) appropriate ballots for voting on the Prepackaged Plan (the "Ballots"), in the forms attached as Exhibit E to the Affidavit of Service and Vote Certification of Financial Balloting Group LLC (the "FBG Affidavit"), sworn to by Jane Sullivan, Executive Director of Financing Balloting Group LLC ("FBG") and filed with the Court on December 15, 2008 (the "Voting Certification") (Dkt. No. 14), having been duly transmitted to holders of Claims in compliance with the procedures (the "Solicitation Procedures") set forth in the Voting Certification; and the Court having entered an order (I) Scheduling a Combined Hearing to Consider (A) Approval of the Disclosure Statement, (B) Approval of Solicitation Procedures and Form of Ballots, and (C) Confirmation of the Prepackaged Plan, (II) Establishing an Objection Deadline to Object to the Disclosure Statement and the Prepackaged Plan, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief (the "Scheduling Order"), which, among other things, scheduled the hearing to approve the Disclosure Statement for January 29, 2009 (the "Disclosure Statement Hearing"), to be immediately followed by a hearing to consider confirmation of the Prepackaged Plan (the "Confirmation Hearing," together with the Disclosure Statement Hearing, the "January 29 Hearings"); and due notice of the January 29 Hearings having been given to holders of Claims against the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication filed with the Court, including (1) the Affidavit/Declaration of Service of Staci McFadden regarding, *inter alia*, Summary of Prepackaged Plan of Reorganization and Notice of (i) Hearing to Consider (a) Debtors' Compliance with Disclosure Requirements and (b) Confirmation of Plan of Reorganization and (ii) Commencement of Chapter 11 Cases, dated December 29, 2008 (Dkt. No. 80), (2) the Affidavit of Publication of

Ken Green in the *Detroit Free Press* regarding Summary of Prepackaged Plan of Reorganization and Notice of (i) Hearing to Consider (a) Debtors' Compliance with Disclosure Requirements and (b) Confirmation of Chapter 11 Cases, dated January 6, 2009 (Dkt. No. 107), and (3) the Affidavit of Publication of Erin Ostenson in the *Wall Street Journal* regarding Summary of Prepackaged Plan of Reorganization and Notice of (i) Hearing to Consider (a) Debtors' Compliance with Disclosure Requirements and (b) Confirmation of Plan of Reorganization and (ii) Commencement of Chapter 11 Cases, dated December 31, 2008 (Dkt. No. 108) (the "Notice Affidavits"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Plan Supplement having been given to holders of Claims against the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, as established by the Affidavit of Service of Staci McFadden regarding the Plan Supplement, dated January 26, 2009 (Dkt. No. 141); and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the January 29 Hearings, including (A) the Disclosure Statement, the Prepackaged Plan (including the Plan Supplement), the Voting Certification, (B) the Debtors' memorandum of law, dated January 22, 2009, in support of confirmation of the Prepackaged Plan, (C) the Declaration of John Wilson in support of confirmation of the Prepackaged Plan, dated January 22, 2009 (the "Wilson Declaration"), (D) the Notice Affidavits, and (E) (i) an objection having been filed to the confirmation of the Prepackaged Plan by JVIS-USA, LLC (Dkt. No. 116), and (ii) a limited objection having been filed to the Disclosure Statement by Perot Systems Corporation (Dkt. No. 137); and the Court being familiar with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the Debtors' Chapter 11 Cases; and the Court being fully familiar

with, and having taken judicial notice of, the entire record of the Debtors' Chapter 11 Cases; and

upon the arguments of counsel and the evidence proffered and adduced at the January 29

Hearings; and the Court having found and determined that the Disclosure Statement should be

approved and the Prepackaged Plan should be confirmed as reflected by the Court's rulings made

herein and at the January 29 Hearings; and after due deliberation and sufficient cause appearing

therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings and Conclusions. The findings and conclusions set forth herein

and in the record of the January 29 Hearings constitute the Court's findings of fact and

conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made

applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).

The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334.

Approval of the Disclosure Statement and confirmation of the Prepackaged Plan are core

proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order

with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are

proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    Chapter 11 Petitions. On December 15, 2008 (the "Commencement

Date"), each Debtor commenced with this Court a voluntary case under chapter 11 of the

Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate

their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

      D.    Judicial Notice. The Court takes judicial notice of the dockets of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

      E.    Burden of Proof. The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

      F.    Adequacy of Disclosure Statement. The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects.

      G.    Voting. As evidenced by the Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and applicable nonbankruptcy law.

H.    Solicitation. Prior to the Commencement Date, the Prepackaged Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Commencement Date, notice of the January 29 Hearings, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Senior Notes Claims (Class 1) and Series A Unit Claims (Class 5) – the Classes of Claims entitled under the Prepackaged Plan to vote to accept or reject the Prepackaged Plan. The period during which the Debtors solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan. The Debtors were not required to solicit votes from the holders of Other Secured Claims (Class 2), Lease Rejection Claims (Class 3), and General Unsecured Claims (Class 4), as each such class is unimpaired under the Prepackaged Plan. The Debtors also were not required to solicit votes from the holders of Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7), as such Classes receive no recovery under the Prepackaged Plan and are deemed to reject the Prepackaged Plan. As described in and as evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the notice of the January 29 Hearings, and publication of such notice of the January 29 Hearings (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws and regulations. The Debtors, the Reorganized Debtors, the Majority Holders and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.      Notice.  As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the January 29 Hearings (including the deadline for filing and serving objections to confirmation of the Prepackaged Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

J.      Plan Supplement.  On January 22, 2009, the Debtors filed the Plan Supplement, which includes the following documents: (i) election form and related documents pursuant to which holders of Senior Notes elected treatment under the Prepackaged Plan and subscription pursuant to the Rights Offering; (ii) the Escrow Agreement, Subscription and Contribution Agreement, Backstop Purchase and Contribution Agreement, and related notices; (iii) schedule of employment agreements to be assumed under the Prepackaged Plan; (iv) schedule of executory contracts to be rejected under the Prepackaged Plan; (v) amended certificate of incorporation of Finance Corp.; (vi) amended by-laws of Finance Corp.; (vii) amended operating agreement of Key Plastics; (viii) identities of the initial members of the board

of directors of Finance Corp. and section 1129(a)(5) compensation disclosures; and (ix) the Exit Facility commitment letter. All such materials comply with the terms of the Prepackaged Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.

        K.      Stockholders Agreement and Management Incentive and Retention Plan. The Stockholders Agreement and Management Incentive and Retention Plan, as of the Effective Date, shall be valid, binding and enforceable in accordance with the terms set forth therein.

        L.      Rights Offering and Related Documents. The Rights Offering and related documents, upon their execution, shall be valid, binding and enforceable in accordance with the terms set forth therein.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

        M.      Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtors, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

        (a)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims (Article II, Section 2.2 of the Prepackaged Plan), Priority Tax Claims, DIP Claims, and Other Priority Claims, which need not be classified, Articles III and IV of the Prepackaged Plan classify seven (7) Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately

DA1:\545429\10\B_%T10!.DOC\56316.0009
RLF1-3363133-1

**8**

classifying the various Classes of Claims and Equity Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III, IV and V of the Prepackaged Plan specify that Other Secured Claims (Class 2), Lease Rejection Claims (Class 3), and General Unsecured Claims (Class 4) are unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III, IV and V of the Prepackaged Plan designate Senior Notes Claims (Class 1), Series A Unit Claims (Class 5), Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Prepackaged Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)). The Prepackaged Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Prepackaged Plan, thereby

satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the substantive consolidation of the Debtors for Prepackaged Plan purposes only, (ii) all corporate action as set forth more fully in Article VI, Section 6.2 of the Prepackaged Plan, including, if necessary, amendments to the organization documents of the Debtors, (iii) the cancellation of existing securities and agreements and the surrender of existing securities, (iv) the issuance of new securities and the contribution thereof, (v) adoption or assumption, as applicable, of the agreements with existing management, (vi) entry into the Stockholders Agreement, (vii) entry into the Exit Facility, and (viii) the cancellation of Liens.

      (f)    Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The restated certificate of formation of Key Plastics (the "Key Plastics Restated Certificate of Formation") prohibits the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code, and authorizes the issuance of one (1) class of common unit shares, the New Key Plastics Equity. Pursuant to the Prepackaged Plan, only the New Key Plastics Equity is being issued. The issuance of the New Key Plastics Equity complies with section 1123(a)(6) of the Bankruptcy Code. The amended certificate of formation (the "Finance Corp. Amended Certificate of Formation") of Finance Corp. prohibits the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code, and authorizes the issuance of two (2) classes of stock (i) 1,400,000 shares of New Finance Corp. Equity and (ii) 100,000 shares of preferred stock. Pursuant to the Prepackaged Plan, only the New Finance Corp. Equity is being issued on the Effective Date. The issuance of the New Finance Corp. Equity complies with section 1123(a)(6) of the Bankruptcy Code. Pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code and the Key Plastics Restated Certificate of Formation and the Finance Corp. Amended Certificate of Incorporation

have been amended as necessary to satisfy the provisions of the Bankruptcy Code and include, among other things, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan Supplement and Section 6.2(f) and (g) of Article VI of the Prepackaged Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)     Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Article III of the Prepackaged Plan, Other Secured Claims (Class 2), Lease Rejection Claims (Class 3), and General Unsecured Claims (Class 4) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article IX of the Prepackaged Plan, including Exhibit I of the Plan Supplement, governing the assumption and rejection of executory contracts and unexpired leases, meets the requirements of section 365(b) of the Bankruptcy Code. There have been no objections to the Debtors' assumption of all executory contracts pursuant to Article IX of the Prepackaged Plan.

(j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(k)     Cure of Defaults (11 U.S.C. § 1123(d)). Section 9.3 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law. Thus, the Prepackaged Plan complies with section 1123(d) of the Bankruptcy Code

N.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the Prepackaged Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan.

O.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have

proposed the Prepackaged Plan, including the Exit Facility contemplated thereunder and all

documents necessary to effectuate the Prepackaged Plan, in good faith and not by any means

forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors'

good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure

Statement, and the record of the January 29 Hearings and other proceedings held in these

Chapter 11 Cases. The Prepackaged Plan was proposed with the legitimate and honest purpose

of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of

the Debtors. The Prepackaged Plan, including all documents necessary to effectuate the

Prepackaged Plan, was negotiated at arms' length amongst representatives of the Debtors, the

Majority Holders, and their respective professionals. The holders of Senior Notes Claims

(Class 1) and Series A Unit Claims (Class 5) that voted to accept the Prepackaged Plan,

signatories to the Restructuring Agreement, the Debtors, and the Majority Holders support

confirmation of the Prepackaged Plan. Further, the Prepackaged Plan's classification,

indemnification, exculpation, release, and injunction provisions have been negotiated in good

faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A),

1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful

reorganization.

P.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

(a)     Any payment made or to be made by the Debtors for services or for costs

and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in

connection with the Prepackaged Plan and incident to the Chapter 11 Cases, has been approved

by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(b) As part of the negotiated terms upon which the Majority Holders agreed to proceed with the consensual, pre-packaged restructuring reflected in the Prepackaged Plan, the Debtors agreed to pay any compensation for professional services rendered and reimburse any expenses incurred, including the reasonable fees and expenses of Latham & Watkins LLP and FTI Consulting, in connection with services provided to Wayzata in connection with the DIP Facility and the Prepackaged Plan, without any requirement to file any retention or fee applications.

(c) Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. As set forth in the Plan Supplement, on the Effective Date, the new board of directors of Reorganized Finance Corp. shall be comprised of five (5) members, each of whom is identified (to the extent such information is available) in the Plan Supplement. Each member the board of directors of Reorganized Finance Corp. will serve in accordance with the terms and subject to the conditions of its restated organizational documents. As set forth in the Prepackaged Plan, Reorganized Finance Corp. shall become the sole member of Reorganized Key Plastics, subject to and accordance with its restated organizational documents. As set forth in the Prepackaged Plan, the officers of the respective Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the officers of Reorganized Finance Corp. shall be determined by its board of directors and the officers of Reorganized Key

Plastics shall be determined by its sole member. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed. Accordingly, the identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Prepackaged Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.

Q.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

R.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)). Other Secured Claims (Class 2), Lease Rejection Claims (Class 3), and General Unsecured Claims (Class 4) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code. Senior Notes Claims (Class 1)

and Series A Unit Claims (Class 5) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors. Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7) are impaired by the Prepackaged Plan and are not entitled to receive or retain any property under the Prepackaged Plan and, therefore, are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Prepackaged Plan may be confirmed notwithstanding the fact that Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7) are impaired and are deemed to have rejected the Prepackaged Plan.

           T.      Treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims pursuant to Section 2.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Other Priority Claims pursuant to Section 2.5 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Pursuant to Section 8.1 of the Prepackaged Plan, no holder of an Administrative Expense Claim is required to file a proof of claim or request for payment of administrative expenses under section 503(b) of the Bankruptcy Code except as set forth in the Prepackaged Plan. The treatment of DIP Claims pursuant to Section 2.4 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. On and after the Effective Date, all such valid Claims shall be paid in the ordinary course of business of the

Reorganized Debtors, subject to parties' ability to dispute such Claims in accordance with Article VIII of the Prepackaged Plan and applicable non-bankruptcy law.

U.  Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Senior Notes Claims (Class 1) and Series A Unit Claims (Class 5) voted to accept the Prepackaged Plan by the requisite majorities, determined without including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.  Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Wilson Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Prepackaged Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Prepackaged Plan and their business in the ordinary course and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.  Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 13.1 of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X.  Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors did not provide retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at any time prior to Confirmation. Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

Y.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7) are deemed to have rejected the Prepackaged Plan. Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Prepackaged Plan does not discriminate unfairly with respect to and is fair and equitable with respect the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any interest that is junior to each such Class will receive or retain any property under the Prepackaged Plan on account of such junior interest, and no holder of a Claim in a Class senior to such Classes is receiving more than 100% on account of its Claim. Thus, the Prepackaged Plan may be confirmed notwithstanding the deemed rejection of the Prepackaged Plan by these Classes.

CC.    Only One Plan (11 U.S.C. § 1129(c)). The Prepackaged Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.    Principal Purpose of the Prepackaged Plan (11 U.S.C. § 1129(d)). The principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Prepackaged Plan on any such grounds. The Prepackaged Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the January 29 Hearings, the Debtors, the Reorganized Debtors, the Majority Holders, the signatories to the Restructuring Agreement, and their respective successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or

regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 11.4 of the Prepackaged Plan.

FF.    Satisfaction of Confirmation Requirements. Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.    Implementation. All documents necessary to implement the Prepackaged Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, including the documentation of the Exit Facility, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

HH.    Sales in Furtherance of the Plan. The sales of those certain assets that are the subject of the Debtors' Motion Pursuant to Sections 105, 363, 365 and 554 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 for an Order Authorizing (i) the Assumption of Certain Purchase and Sale Agreements, (ii) the Sale of the Debtors' Interest in Certain Real Property and Related Assets Free and Clear of Liens, and (iii) If Necessary, the Abandonment of Certain *De Minimis Assets* (Dict. No. 105) (the "York Assets"), are contemplated by and made in furtherance of the Prepackaged Plan and, accordingly, satisfy the requirements of sections 1123(a)(5)(d) and 1146(a) of the Bankruptcy Code.

II.    Injunction, Exculpation, and Releases. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Sections 11.4, 11.5, 11.6, and 11.9 of the Prepackaged Plan,

respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the unopposed releases set forth in Sections 11.4, 11.5, 11.6, and 11.9 of the Prepackaged Plan, respectively, if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the January 29 Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. Further, the exculpation provision in the Prepackaged Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order to have constituted fraud, willful misconduct or gross negligence. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Prepackaged Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors and equity holders. The releases of non-Debtors under the Prepackaged Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.,* 203 F.3d 203, 214 (3d Cir. 2000). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunction provided for in Sections 11.4, 11.5, 11.6, and 11.9 of the Prepackaged Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court

finds that the injunction, exculpation, and releases set forth in Article XI of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation and releases would seriously impair the Debtors' ability to confirm the Prepackaged Plan.

JJ.     Compromise of Controversies. Except as otherwise provided in the Prepackaged Plan and this Confirmation Order, the Prepackaged Plan is a settlement between and among the Debtors and their creditors and equity holders of all Claims and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Confirmation Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Prepackaged Plan), including pursuant to Section 11.11 of the Prepackaged Plan.

KK.     Good Faith. The Debtors and the Majority Holders, the other parties under the DIP Facility, the lenders and the agents under the Exit Facility, including, for the avoidance of doubt, Wayzata Investment Partners LLC and its affiliates, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order.

LL.     Exit Facility. Upon diligent inquiry, the Debtors have determined that the Exit Facility is the best alternative available to the Debtors. The Exit Facility has been negotiated in good faith and on an arms' length basis and each party thereto may rely upon the

provisions of this Confirmation Order in closing the Exit Facility. The availability of Exit

Facility is necessary to the consummation of the Prepackaged Plan and the operation of the

Reorganized Debtors. The terms and conditions of the Exit Facility as described in the

commitment letter included as Exhibit N to the Plan Supplement (the "Commitment Letter") are

fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with

their fiduciary duties, are supported by reasonably equivalent value and fair consideration and

are in the best interests of the Debtors' estates and their creditors. The execution, delivery, or

performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in

connection with the Exit Facility Commitment Letter, and compliance by the Debtors or

Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not

conflict with, the terms of the Prepackaged Plan or this Confirmation Order. The financial

accommodations to be extended pursuant to the Commitment Letter and the Exit Facility

documents are being extended in good faith, for legitimate business purposes, are reasonable,

and shall not be subject to recharacterization for any purposes whatsoever and shall not

constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any

other applicable nonbankruptcy law. The Exit Facility documents, including the Commitment

Letter, any associated fee letter and any definitive loan documentation, shall constitute legal,

valid, binding and authorized obligations of the Reorganized Debtors enforceable in accordance

with their terms. On the Effective Date, all of the liens and security interest to be granted in

accordance with the Exit Facility documents shall be deemed approved and shall be legal, valid,

binding and enforceable first priority liens on the collateral for the Exit Facility. The security

interests and liens granted in accordance with the Exit Facility documents shall not be subject to

recharacterization or equitable subordination for any purposes whatsoever and shall not

constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. The Debtors and/or Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs and expenses paid or to be paid by the Reorganized Debtors in connection with the Exit Facility are hereby ratified and approved.

MM. <u>Valuation</u>. Pursuant to the valuation analysis set forth in the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to holders of Existing Key Plastics Units (Class 6) and Existing Finance Corp. Stock (Class 7) under absolute priority principles.

NN. <u>Retention of Jurisdiction</u>. The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Prepackaged Plan and section 1142 of the Bankruptcy Code.

OO. JVIS-USA, LLC ("<u>JVIS</u>") asserts an unsecured claim in the amount of approximately $380,000 (the "<u>JVIS Claim</u>"). The Debtors contest the validity and the amount of the JVIS Claim. Accordingly, the JVIS Claim constitutes a Disputed Claim pursuant to Section 8.1 of the Prepackaged Plan.

PP. The Debtors and JVIS have stipulated, with respect to the JVIS Claim, to (i) participate in an informal information exchange within two (2) weeks of the date of this Order, (ii) participate in a non-binding mediation or facilitation in Detroit, Michigan within

forty-five (45) days after the occurrence of the Effective Date, and (iii) if the matter is not resolved by non-binding mediation or facilitation, submit the matter to binding confidential arbitration ("Arbitration"), administered by the Detroit, Michigan office of the American Arbitration Association ("AAA") and conducted pursuant to the rules then in effect of the AAA governing commercial disputes within sixty (60) days thereafter, which Arbitration shall be completed within 120 days of submission.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. <u>Notice of the January 29 Hearings</u>. Notice of the January 29 Hearings complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Solicitation</u>. The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

4.    Ballots. The forms of Ballots annexed to the Voting Certification are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

5.    The Disclosure Statement. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder. Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). The Debtors have complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation to creditors was made only to those creditors who are "Accredited Investors" as defined in Regulation D under the Securities Act, as creditors were required to certify on their Ballots that they were accredited investors.

6.    Confirmation of the Prepackaged Plan. The Prepackaged Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The

terms of the Prepackaged Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

7. Objections. All Objections, responses to, and statements and comments, if any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the January 29 Hearings, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

8. No Action.

(a) Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no action of the directors or stockholders of the Finance Corp. shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Prepackaged Plan, including the any documentation executed in connection with the Debtors' Exit Facility.

(b) Pursuant to the appropriate provisions of the Michigan limited Liability Company Act and section 1142(b) of the Bankruptcy Code, no action of the members or stockholders of the Key Plastics shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Prepackaged Plan, including the any documentation executed in connection with the Debtors' Exit Facility.

9. Binding Effect. On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Prepackaged Plan shall bind the

Debtors, the Reorganized Debtors, all holders of Claims and Equity Interests of the Debtors

(irrespective of whether such Claims or Equity Interests are impaired under the Prepackaged

Plan or whether the holders of such Claims or Equity Interests accepted or are deemed to have

accepted the Prepackaged Plan), any and all non-Debtor parties to executory contracts and

unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and

the respective heirs, executors, administrators, successors, or assigns, if any, of any of the

foregoing.

    10. <u>Free and Clear</u>. Except as otherwise provided in the Prepackaged Plan or

in this Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall be

vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges

and other interests of creditors and equity security holders of the Debtors. From and after the

Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire or

dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Court,

or the United States Trustee (except for quarterly operating reports and fees associated

therewith).

    11. <u>DIP Claims</u>. On the Effective Date, all Allowed DIP Claims, if any, shall

be paid in full in Cash from, *inter alia*, the proceeds of the Rights Offering and/or the Exit

Facility. Upon payment and satisfaction in full of all Allowed DIP Claims, all Liens and security

interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall

be terminated and of no further force or effect.

    12. <u>Substantive Consolidation</u>. Pursuant to Section 6.1 of the Prepackaged

Plan, the Prepackaged Plan is premised upon the substantive consolidation of the Debtors for

purposes of the Prepackaged Plan only. Accordingly, on the Effective Date, all of the Debtors

and their Estates shall, for purposes of the Prepackaged Plan only, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated for as though they were merged, (iii) all joint obligations of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single claim against the Debtors, and (iv) any Claim filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Prepackaged Plan) affect (x) the legal and corporate structures of the Debtors and (y) any intercompany claims; provided, however, that notwithstanding the foregoing, each Debtor shall continue to fulfill any and all post-confirmation obligations attributable to it as if no substantive consolidation has occurred for purposes of the Prepackaged Plan.

13. Implementation of the Prepackaged Plan. The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Prepackaged Plan, including all such actions delineated in Section 6.2 of the Prepackaged Plan. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors, the members of the Reorganized Finance Corp. board of directors, and the sole member of Reorganized Key Plastics, Reorganized Finance Corp., are empowered to issue, execute, file and deliver or record such documents, contracts, instruments, releases and other agreements, including those contained in the Plan Supplement, contemplated by the Prepackaged Plan, in the name of and on behalf of the Reorganized Debtors. On the Effective Date, the terms for existing board of directors of Finance Corp. shall be deemed

to have expired and without the need for further action by the Debtors or board member. The boards of directors of Reorganized Finance Corp. shall, as of the Effective Date, consist of those directors identified in the Plan Supplement (to the extent such information is available), without the need for any further action. As of the Effective Date, after contribution of the New Key Plastics Equity to Reorganized Finance Corp., Reorganized Finance Corp. shall become the sole member of Reorganized Key Plastics.

14. Issuance of New Key Plastics Equity. Reorganized Key Plastics is authorized to issue 1,000,000 common unit shares of the New Key Plastics Equity to holders of Allowed Senior Note Claims, without further need for any corporate or limited liability company action.

15. Contribution of New Key Plastics Equity. The holders of Allowed Senior Notes Claims making the Equity Election under the Prepackaged Plan are hereby authorized to contribute 100% of the New Key Plastics Equity to Reorganized Finance Corp. without further need for any action by any such holders.

16. Issuance of New Finance Corp. Equity. Following the contribution of all New Key Plastics Equity by the holders of Allowed Senior Notes Claims making the Equity Election under the Prepackaged Plan, Reorganized Finance Corp. is authorized to issue the 1,000,000 shares of New Finance Corp. Equity to such holders in exchange for 100% of the New Key Plastics Equity to Reorganized Finance Corp. without further need for any corporate action. For sake of clarity, all New Key Plastics Equity purchased pursuant to the Rights Offering and the Backstop Purchase Agreement will subsequently be contributed to Reorganized Finance Corp. in exchange for an equivalent amount of New Finance Corp. Equity. The Stockholders Agreement shall be, upon execution and delivery, legal, valid, and binding obligations of

Reorganized Finance Corp. and enforceable against Reorganized Finance Corp. in accordance with its terms.

17.    Compliance with Section 1123(a)(6) of the Bankruptcy Code. The Key Plastics Restated Certificate of Formation, the Finance Corp. Amended Certificate of Formation, and the terms governing the issuance of the New Key Plastics Equity and New Finance Corp. Equity, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by Reorganized Finance Corp. of the Finance Corp. Amended Certificate of Formation and the adoption and filing by Reorganized Key Plastics of the Key Plastics Restated Certificate of Formation are hereby authorized, ratified, and approved.

18.    Exemption from Securities Laws. The Prepackaged Plan contemplates the issuance of New Key Plastics Equity to holders of Allowed Senior Notes Claims making the Equity Election in exchange for such Claims. Following the contribution of all New Key Plastics Equity by the holders of Allowed Senior Notes Claims making the Equity Election, the Prepackaged Plan also contemplates the issuance of New Finance Corp. Equity to such holders. In reliance upon section 1145 of the Bankruptcy Code, the offer and issuance of New Key Plastics Equity and New Finance Corp. Equity will be exempt from the registration requirements of the Securities Act and equivalent provisions in state securities laws.

19.    Cancellation of Existing Securities and Agreements. On the Effective Date, all Existing Series A Unites, Senior Notes, Existing Key Plastics Units, and Existing Finance Corp. Stock shall be cancelled; *provided, however* the Senior Notes Indenture shall continue in effect solely for the purpose of (i) allowing the holders Senior Notes Claims to receive their distributions hereunder and (ii) permitting the Indenture Trustee to maintain any rights it may have for fees, costs, and expenses under the Senior Notes Indenture, including,

without limitation, any fees, costs and expenses arising under section 7.07 of the Indenture, which includes the Indenture Trustee's indemnification rights.

20.    Surrender of Existing Securities. On or before the Distribution Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall surrender such Certificate to the Disbursing Agent, or, with respect to the Senior Notes, the Indenture Trustee, and such Certificate shall be cancelled. No distribution of property under the Prepackaged Plan shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the Indenture Trustee, as the case may be, or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the Indenture Trustee, as the case may be. Any such holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the Indenture Trustee, as the case may be, prior to the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims or Equity Interests in respect of such Certificate and shall not participate in any distribution under the Prepackaged Plan, and (i) all Cash in respect of such forfeited distribution, including interest accrued thereon, shall revert to the Reorganized Debtors and (ii) all New Finance Corp. Equity in respect of such forfeited distribution shall be cancelled notwithstanding any federal or escheat laws to the contrary.

21.    Agreements with Existing Management. The Debtors are hereby authorized to, and shall on the Effective Date, either assume all existing employment agreements for those employees who are currently subject to a written employment agreement or enter into amended or modified employment agreements. If no amended or modified employment

agreements are entered into as of the Effective Date, the existing employment agreements will be deemed assumed as of the Effective Date.

22.     Stockholders Agreement and Management Incentive and Retention Plan. The Debtors are hereby authorized, on the Effective Date, to enter into the Stockholders Agreement and Management Incentive and Retention Plan.

23.     Cancellation of Liens. Except as otherwise provided in the Prepackaged Plan, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

24.     Compromise of Controversies. In consideration for the distributions and other benefits, including releases, provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Prepackaged Plan, and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to section 11.11 of the Prepackaged Plan.

25.     Assumption or Rejection of Contracts and Leases. Pursuant to Section 9.1 of the Prepackaged Plan, except as otherwise provided in the Prepackaged Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to

section 365 of the Bankruptcy Code, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) was previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by the Debtors as part of the Plan Supplement. Such contract and lease assumptions or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, if any, are overruled.

26. <u>Conditions to Effective Date</u>. The Prepackaged Plan shall not become effective unless and until the conditions set forth in Section 10.1 of the Prepackaged Plan have been satisfied or waived pursuant to Section 10.2 of the Prepackaged Plan. In the event that one or more of the conditions specified in Section 10.1 of the Prepackaged Plan have not occurred on or before the time period set forth in Section 10.3 of the Prepackaged Plan or otherwise been waived pursuant to Section 10.2 of the Prepackaged Plan, (i) this Confirmation Order shall be vacated, (ii) no distributions under the Prepackaged Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (iv) all amounts held in escrow for the purchase of New Key Plastics Equity pursuant to the Rights Offering shall be returned to the holders of Senior Notes Claims who submitted such amounts, and (v) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Prepackaged Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors and the Prepackaged Plan shall be deemed withdrawn.

27.    Professional Compensation. Except as provided in Section 2.1 of the

Prepackaged Plan, all entities seeking awards by the Bankruptcy Court of compensation for

services rendered or reimbursement of expenses incurred through and including the

Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the

Bankruptcy Code shall (a) file, on or before the date that is ninety (90) days after the Effective

Date, their respective applications for final allowances of compensation for services rendered

and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are

Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such

Administrative Expense Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee

Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. The

Reorganized Debtors are authorized to pay compensation for professional services rendered and

reimbursement of expenses incurred after the Confirmation Date in the ordinary course and

without the need for Bankruptcy Court approval.

28.    Objections to Final Fee Applications. All objections to any Final Fee

Applications shall be filed with the Court, together with proof of service thereof, and served

upon the applicant and the Notice Parties, so as to be received not later than 4:00 p.m. prevailing

Eastern Time on the date that is five (5) Business Days prior to the Final Fee Hearing.

29.    Administrative Expenses. Subject to the terms and conditions of the Final

DIP Order, administrative expenses incurred by the Debtors or the Reorganized Debtors after the

Effective Date, including Claims for professionals' fees and expenses, shall not be subject to

application and may be paid by the Debtors or the Reorganized Debtors, as the case may be, in

the ordinary course of business and without further Bankruptcy Court approval. The

Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Disbursing

Agent (including taxes and the reasonable fees and expenses of the Disbursing Agent's attorneys) on or after the Effective Date in Cash in the ordinary course of business.

30. Discharge. As of the Effective Date, the confirmation of the Prepackaged Plan shall (i) pursuant to Section 11.3 of the Prepackaged Plan and except as otherwise provided in the Prepackaged Plan, in exchange for and in complete satisfaction, discharge and release, all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date, or against their Estates or properties or interests in property, and, except as provided otherwise in the Prepackaged Plan, upon the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full in exchange for the consideration provided under the Prepackaged Plan, and (ii) except as provided otherwise in the Prepackaged Plan all entities shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

31. Releases by the Debtors. The Debtors shall, effective upon the occurrence of the Effective Date, effective as of the Confirmation Date, (i) release and be permanently enjoined from any prosecution or attempted prosecution of any and all causes of action which they have or may have against any present or former member, manager, officer, director, or employee of the Debtors; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of (a) any express contractual obligation owing by any such member, manager, officer, director, or employee of the Debtors or (b) the willful misconduct or gross negligence of such member, manager, officer, director, or employee in

connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of Confirmation of

the Prepackaged Plan, the consummation of the Prepackaged Plan, the administration of the

Prepackaged Plan, or the property to be distributed under the Prepackaged Plan and (ii) release

and be permanently enjoined from any prosecution or attempted prosecution of any and all

claims and causes of action, including any claims or causes of action under Chapter 5 of the

Bankruptcy Code, which they have or may have against any of the Majority Holders or any

holder of Senior Notes Claims who is a signatory to the Restructuring Agreement and their

respective members, officers, directors, agents, financial advisors, attorneys, employees, equity

holders, partners, affiliates, and representatives and their respective property in connection with

actions taken as or in their capacity as a holder of Senior Notes.

      32.     Releases by Holders of Claims and Equity Interests.  Except for the right

to enforce the Prepackaged Plan, each Person who votes to accept the Prepackaged Plan, or who,

directly or indirectly, is entitled to receive a distribution under the Prepackaged Plan, including

Persons entitled to receive a distribution via an attorney, agent, indenture trustee or securities

intermediary, shall be deemed to forever release, waive and discharge the Debtors, Reorganized

Debtors, each member of the Majority Holders and each of their respective members, managers,

officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners,

affiliates, and representatives and their respective property of and from any and all Claims,

demands, causes of action and the like, relating to the Debtors or their affiliates, existing as of

the Effective Date or thereafter arising from any act, omission, event, or other occurrence that

occurred on or prior to the Effective Date, whether direct or derivative, liquidated or

unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or

unknown, foreseen or unforeseen, in law, equity or otherwise, subject to a limited carve-out solely for criminal acts and fraud.

33.    Release and Exculpation Provisions. All release and exculpation provisions embodied in the Prepackaged Plan, including but not limited to those contained in Sections 11.4, 11.5, and 11.6 of the Prepackaged Plan, are (i) integral parts of the Prepackaged Plan, (ii) fair, equitable and reasonable, (iii) given for valuable consideration and (iv) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided therein.

34.    Waiver of Avoidance Actions. Pursuant to Section 11.7 of the Prepackaged Plan, effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the released parties relating to distributions made on account of interest or other obligations under and relating to the Senior Notes.

35.    Term of Injunctions or Stays. Pursuant to Section 11.8(a) of the Prepackaged Plan, this Confirmation Order shall, except as otherwise expressly provided in the Prepackaged Plan, constitute an injunction from and after the Effective Date, permanently enjoining all Persons or entities who have held, hold or may hold Claims against or Equity Interests in any Debtor from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to any such Claim

or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to Section 11.5 or 11.6 of the Prepackaged Plan. Pursuant to Section 11.9(b) of the Prepackaged Plan, unless otherwise provided in the Prepackaged Plan, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

36. Disputed Claims. In accordance with Section 8.1 of the Prepackaged Plan, nothing herein shall impair any rights of setoff or recoupment to which a holder of a Disputed Claim may be entitled under the Bankruptcy Code or applicable law. In addition, notwithstanding anything contained within the Prepackaged Plan, any right of setoff or recoupment held by Continental Automotive Systems U.S., Inc. or any related entity, and any defenses thereto, which may be asserted by the Debtors, shall remain unaffected by the Prepackaged Plan.

37. Indemnification Obligations.

(a) Pursuant to Section 11.9 of the Prepackaged Plan, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' certificate of formation, certificate of incorporation, bylaws, or other organizational documents, applicable law or other applicable agreement as of the Commencement Date to indemnify,

defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of members, managers, directors, or officers who were members, managers, directors or officers of the Debtors at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Commencement Date. Any Claim based on the Debtors' obligations under the Prepackaged Plan shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)     As of the Effective Date, each Debtors' respective organizational documents shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, members, managers, directors, and officers who were members, managers, directors, or officers of such Debtor at any time prior to the Effective Date at least to the same extent as those in effect on the Commencement Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtors shall not amend and/or restate such organizational documents before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such members', managers', directors', or officers' rights under Section 11.9 of the Prepackaged Plan.

(c)     After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Commencement Date, and all members, managers, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

38.     Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

39.     Intercompany Claims.  Notwithstanding anything to the contrary herein, on or after the Effective Date, any debts held by a Debtor against another Debtor will be adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, or discharged to the extent reasonably determined appropriate by the Debtors taking into account the economic condition of the applicable Reorganized Debtor.

40.     Compliance with Tax Requirements.  Each holder of an Allowed Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

41. Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Prepackaged Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Commencement Date through and including the Effective Date, including the sale of the York Assets and any other transfers effectuated under the Prepackaged Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Prepackaged Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

42. Documents, Mortgages, and Instruments. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Prepackaged Plan and this Confirmation Order.

43. Reversal/Stay/Modification/Vacatur of Confirmation Order. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Prepackaged Plan or any amendments or modifications thereto.

44. The JVIS Claim is disputed claim pursuant to Section 8.1 of the Prepackaged Plan, and the JVIS Claim shall therefore be unaffected by the releases and injunctions contained in Sections 11.6 and 11.8 of the Prepackaged Plan.

45. The stipulation contained in paragraph OO hereof between the Debtors and JVIS is hereby approved.

46. Retention of Jurisdiction. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Prepackaged Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XII of the Prepackaged Plan.

47. <u>Modifications</u>. Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, subject to the prior written consent of the Majority Holders, are authorized and empowered to make any and all modifications to the Prepackaged Plan, any and all documents included as part of the Plan Supplement, and any other document that is necessary to effectuate the Prepackaged Plan that do not materially modify the terms of such documents and are consistent with the Prepackaged Plan.

48. <u>Provisions of Prepackaged Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Prepackaged Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

49. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit to the Prepackaged Plan or Plan Supplement (including the Exit Facility documents) provides otherwise (in which case the governing law specified therein shall be applicable to such Exhibit), the rights, duties and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws.

50. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

51. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with

the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

52.     Governmental Approvals Not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

53.     Notice of Confirmation Order. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form annexed hereto as Exhibit B, to all parties who hold a Claim or Equity Interest in these cases, including the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

54.     Substantial Consummation. On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

55.     Waiver of Stay. The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

56.  Inconsistency.  To the extent of any inconsistency between this Confirmation Order and the Prepackaged Plan, this Confirmation Order shall govern.

57.  No Waiver.  The failure to specifically include any particular provision of the Prepackaged Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

Dated:  Jan. 29 , 2009
        Wilmington, Delaware

                                    THE HONORABLE MARY F. WALRATH
                                    UNITED STATES BANKRUPTCY JUDGE